[Civ. No. 4297. Third Appellate District.—September 18, 1931.]

J. D. HALSTEAD LUMBER COMPANY (a Corporation), Appellant, v. SECURITY TITLE INSURANCE AND GUARANTEE COMPANY (a Corporation) et al., Respondents.

D. Chase Rich for Appellant.

W. C. Shelton and George W. Burch, Jr., for Respondent.

PLUMMER, J.—The plaintiff began this action to restrain the defendant Security Title Insurance and Guarantee Company, a corporation, from executing and delivering a trust deed to the defendant Harry H. Andrews, conveying certain property hereinafter mentioned, or in lieu thereof judgment against each of said defendants in the sum of $8,000, together with interest at the rate of eight per cent per annum thereon from the fourth day of May, 1928. The defendants had judgment and the plaintiff appeals.

The record shows that on or about the first day of July, 1926, W. P. Stillman and Florence R. Stillman, his wife, and A. M. McLellan and Hazel McLellan, his wife, were

the owners of record of lot 10 in block "E," Knob Hill tract, city and county of Los Angeles. That on or about said date said owners made, executed and delivered to the Union Engineering Company, Incorporated, their promissory note in writing for the sum of $25,000, payable in semi-annual installments of $500 each, with interest thereon at the rate of eight per cent per annum, and upon the same date executed and delivered to the Security Title Insurance Company a deed of trust to said property to secure the payment of the sum of $25,000, evidenced by said promissory note. This deed of trust was made subject to a certain other deed of trust executed and delivered to one H. C. Ward, to secure the payment of $75,000. That at a subsequent date the Union Engineering Company, Incorporated, transferred to the plaintiff the said $25,000 note, together with its interest in the trust deed made and executed to secure the payment thereof. Following this transaction the plaintiff for the consideration of the sum of $20,000, assigned said promissory note, together with its rights under said deed of trust, to the defendant Harry H. Andrews. At the same time the plaintiff entered into an agreement by which it guaranteed the payment of at least $8,000 of the sum represented by said promissory note.

On or about the eighteenth day of February, 1927, the makers of said promissory note for $25,000, having become bankrupt, the defendant Harry H. Andrews, demanded of the defendant Security Title Insurance and Guarantee Company, that it proceed to sell the premises covered by the deed of trust given to secure the payment of said $25,000 note. The $8,000 guaranteed to be paid by the plaintiff to the defendant Andrews, not having been paid, the defendant Andrews began a suit against the plaintiff to recover the sum of $8,000. Subsequent to the beginning of this suit, payment of the $8,000 guaranteed to be made by the plaintiff to the defendant Andrews was arranged for, and the defendant Andrews and the plaintiff entered into an agreement by virtue of which, if the premises covered by the deed of trust hereinbefore referred to, given to secure the payment of the $25,000 note, should be sold for sufficient to reimburse the defendant Andrews, the plaintiff should receive payment out of the selling price thereof to the

extent of $8,000 and interest thereon, and thereupon there was indorsed upon the $25,000 promissory note the following:

"J. D. Halstead Lumber Company has an interest to the extent of $8,000 and interest thereon at 8 per cent per annum from May 4, 1928, by way of subrogation to certain rights of Harry H. Andrews, which said interest and the terms and conditions thereof are more fully set forth and described in that certain settlement agreement between said J. D. Halstead Lumber Company and said Harry H. Andrews, dated May 4, 1928, reference to which is hereby made.

"Dated: May 4, 1928.

"(Signed): HARRY H. ANDREWS,
"(Signed): W. C. SHELTON, Witness."

The agreement of May 4, 1928, referred to in the indorsement of the promissory note, provided for the payment by the plaintiff to the defendant Andrews of the $8,000 hereinbefore referred to, and also provided that in the event of the sale of the premises covered by the second deed of trust being made for more than sufficient to repay the defendant Andrews for all moneys expended by him, then there should be paid to the plaintiff the sum of $8,000, with interest thereon as mentioned in said indorsement, and that the plaintiff should be considered as subrogated to the rights of the party of the first part therein, and to have the said sum of $8,000 with interest thereon, secured by the deed of trust, given to secure the payment of the $25,000 note. The agreement of settlement contained the further provision, to wit: "Should the said property on the foreclosure sale be purchased for less than sufficient to reimburse the party of the first part (being the defendant Andrews), for the remaining interest in the said note, together with all accrued interest, costs and expenses and attorney's fees, as hereinabove provided, then the party of the second part shall have no interest whatsoever in said property, and it is expressly understood and agreed that should the party of the first part become a purchaser of said property on the said trustee's sale, that said party of the second part shall have no right or interest in said property after the said purchase. That such right of subrogation is limited solely to such rights of subrogation as the second party is entitled to under the said guaranty

dated December 24, 1926''; (the second party to this agreement being the plaintiff in this action). The trust deed referred to contained the usual covenants found in such instruments, provided for sale thereof in the event of default of payment, etc. Pursuant to the demand of the defendant Andrews, based upon the default of the makers of said $25,000 note to make payment thereof, the Security Title Insurance and Guarantee Company, a Corporation, began proceedings to sell the property covered by the trust deed. The record shows that the sale of the premises was delayed by certain legal proceedings not material to be mentioned herein, and that later the trustee, on or about the twenty-first day of March, 1928, gave notice of the sale of the property covered by the trust deed, stating the date when, and the place where sale would be made. The notice of sale contained, among other provisions, the following: ''Auction under Stillman deed of trust, recorded in book 6285, page 131, official records, County of Los Angeles. Terms of sale are cash, gold coin of the United States, in accordance with the terms of the note. Those having an interest under the note may tender in lieu of gold coin, their bids as follows: As to bids on behalf of Harry H. Andrews—As to bids on behalf of Harry H. Andrews up to and including the sum of $22,520.95, of this amount or any portion thereof, Mr. Andrews may tender his receipt to the trustee in lieu of cash, with the exception of $521.40 which must be in cash. As to bids on behalf of J. D. Halstead Lumber Company— Trustee will require cash on all bids up to the sum of $22,520.95, and as to bids in excess of that amount but less than $30,551.17, will accept the receipt of said J. D. Halstead Lumber Company for that portion of such bid over $22,520.95. As to that portion of any bid exceeding $30,551.17, such excess must be cash.''

At the sale of the premises by the trustee, pursuant to said notice, the defendant Andrews became the purchaser thereof for the sum of $16,000. It is alleged in the complaint that at the time of the sale the property was worth $125,000, being in excess, as alleged in the complaint, of the amount due on the promissory notes secured by the first and second deeds of trust. It is further alleged in the complaint that a conspiracy was entered into between the defendant Security Title Insurance and Guarantee Company and

the defendant Harry H. Andrews, relative to the sale of said premises. This is based upon an agreement set forth in the record to the effect that in any action prosecuted against the Security Title Insurance and Guarantee Company on account of the sale of said premises, the defendant Andrews would hold said Security Title Insurance and Guarantee Company harmless. This agreement appears to have been entered into for the reason that after demand had been made by the defendant Andrews upon the Security Title Insurance and Guarantee Company as trustee, to make sale of said premises, notice had been served by the plaintiff threatening action against said company if a sale of said premises were proceeded with. The court found against the contention of the plaintiff as to any conspiracy by reason of this agreement, or otherwise. The agreement is too lengthy to be set forth herein but our attention has been called to nothing therein indicating that the conclusion of the trial court was and is not fully supported. The real contention of the plaintiff upon this appeal. is first, that the proceedings leading up to the foreclosure sale were and are void; and second, that at the sale the plaintiff became the purchaser of the premises, together with the defendant Andrews.

█ As to the first point urged for reversal, to wit, that the proceedings should have been amended, re-advertised and reposted so as to show an interest of the plaintiff in and to the foreclosure proceedings, it is sufficient to say that no such issue is tendered by the pleadings, nor was any such issue tendered to the trial court for determination. All that the plaintiff asks for is either that a deed be made to it as a tenant in common with the defendant Andrews, or for the recovery of the sum of $8,000 and interest. What we have said is fully supported by the text found in 2 California Jurisprudence, 234, and the cases there cited, to wit: "It is a well established general rule that with certain exceptions to be noted hereafter, an appellate court will consider only such objections as were raised in the trial court. This rule precludes a party from asserting on appeal claims to relief not asserted or asked for in the court below. And it also prevents an appellant from raising matters of defense not pleaded in the trial court," etc. The authorities there cited are too numerous to be listed

here. However, we may set forth the following excerpts from the opinion in *Los Angeles Investment Co.* v. *Home Sav. Bank,* 180 Cal. 601–615 [5 A. L. R. 1193, 182 Pac. 293]; to wit: "It is clear that the point was not made at the trial, that the cause was tried on other issues entirely, and as if this point were not present, and that the necessity of proving either tender or an excuse for it was not brought to the plaintiff's attention. Such a point which the plaintiff might, and in this case in all probability could have met by sufficient evidence if objection to its recovery had been made on this ground at the trial, cannot be raised for the first time upon appeal." (Citing *Bank of Stockton* v. *Howland,* 42 Cal. 129; *Richey* v. *Haley,* 138 Cal. 441 [71 Pac. 499].) The proceedings had at the sale, as shown by the testimony in the instant case, may be summarized as follows: There was present conducting the sale William H. B. Haymond, assistant secretary of the Security Title Insurance and Guarantee Company, the defendant Harry H. Andrews, W. C. Shelton, George W. Burch, Jr., A. E. Halstead and D. C. Rich, attorney for the plaintiff. The trustee distributed copies of the memorandum setting forth the terms of sale, being the notice heretofore set forth in this opinion. The trustee then announced the sale by reading a copy of the notice. In reading the notice of sale the trustee stated the amount of principal and interest, including attorney's fees, costs and expenses of sale, and announced the amount due. Bids were then called for, whereupon Harry H. Andrews bid, individually, the sum of $10,000. Mr. D. C. Rich, then, speaking on behalf of the J. D. Halstead Lumber Company, offered a bid on behalf of Harry H. Andrews and the J. D. Halstead Lumber Company, as joint beneficiaries in the deed of trust, in the sum of $30,551.17. To this bid Harry H. Andrews objected on the ground that D. C. Rich had no authority to bid for said property in his behalf. The trustee then asked if the J. D. Halstead Lumber Company was prepared to pay in cash the sum of $22,525.95, as required by the ·notice of sale distributed by the trustee, and read by the trustee, before making the sale. This question was not answered by Mr. Rich, who had offered the bid, nor by anyone else in behalf of said J. D. Halstead Lumber Company. That immediately after making this bid, and after this question

had been asked and unanswered, the said D. C. Rich and A. E. Halstead departed from the place where said sale was being made. The sum of $22,525.95 not having been paid, nor any part thereof having been paid, the trustee declined to accept the bid made by the said D. C. Rich, and again offered said property for sale, at which time the defendant Andrews bid for said property the sum of $16,000, and there being no further or higher bids, the property was sold to the defendant Andrews for the said sum of $16,000. The record further shows that the J. D. Halstead Lumber Company did not furnish any of its officers with the necessary cash required by the notice of sale to be paid by said company in the event it became the purchaser thereof, nor did any officer of said company go to the sale furnished with said sum of $22,551.17, or any part thereof, to make payment on the purchase price of the sale of said premises in the event that the J. D. Halstead Lumber Company became the purchaser thereof.

While the record does contain some testimony to the effect that the property involved in this action is reasonably worth the sum of $127,000, there is also testimony to the effect that it would not sell for anything like that sum, the sale in this instance being made subject to the first deed of trust executed and delivered by the owners of the property to secure the payment of a note for the sum of $75,000, upon which default had already been made.

A considerable portion of the appellant's brief is devoted to the subject of subrogation and the rights of tenants in common. Under the facts which we have summarized, and as found by the trial court, in view of the agreement entered into between the parties as to their rights upon sale of the premises, we do not think that the question of subrogation is really an issue in this case. If it were, the rule set forth in *Finnell* v. *Goodman, etc.,* 156 Cal. 18 [103 Pac. 483], is a complete answer to the appellant's contention. In order to be subrogated to the rights of Andrews it would be necessary for the plaintiff to have bid the amount due to said Andrews.

The facts which we have recited justified the trial court in refusing to accept the bid made by D. C. Rich, the attorney for the Halstead Lumber Company, as a joint bid in behalf of said Company and the defendant Andrews.

The record shows that D. C. Rich was not authorized to make any such bid on behalf of Andrews, and further shows as we have stated, that the Halstead Lumber Company took no measures to comply with the terms of the notice of the sale of the property involved in this action.

The agreements and written instruments entered into between the parties to this action, as we have stated, were very lengthy, but the essence of all of them was and is to the effect that the defendant Harry H. Andrews was first to receive his money out of any proceeds arising from the sale of the premises covered by the trust deed, and that if a sale should be made, the rights of the parties would be as evidenced by the quotation from one of the agreements set forth herein.

Not having tendered any question or issue as to the regularity of the sale, or of anything further than its alleged rights based upon the character of the bid made by D. C. Rich, there appears nothing in the record justifying a reversal of the judgment herein. It therefore follows that the judgment of the trial court must be and the same is hereby affirmed.

Thompson (R. L.), J., and Preston, P. J., concurred.