[L. A. No. 1575. In Bank.—April 2, 1907.]

A. S. KOYER, Appellant, v. J. C. WILLMON, Respondent.

PARTNERSHIP—REAL ESTATE—PAROL AGREEMENT.—A partnership for
the purpose of buying, holding, and selling lands may be formed
by an agreement resting in parol, and such parol agreement is valid.

ID.—PURCHASE BY PARTNER IN INDIVIDUAL NAME—CONSTRUCTIVE TRUST
—TENDER OF PURCHASE PRICE—COSTS.—Where a partnership is
entered into for the purpose of buying a particular lot of land, each
of the partners occupies the position of a trustee to the other with
regard to all the partnership transactions, including the transactions
contemplated by the firm and constituting the object or purpose
for which the partnership was formed; and if one of the partners,
after securing an option on the lot while acting for the firm, subse-
quently purchases it in his own name and with his individual money,
he becomes a constructive trustee for his copartner to the extent
of the latter's interest in the partnership. In such a case, the
beneficiary of the constructive trust may tender to and offer to pay
into court for the trustee whatever may be found just and equitable,
and demand a reconveyance from the trustee, to be delivered on pay-
ment of the money. The fact of a previous tender of payment is
usually important only to the determination of the question as to
which of them shall recover costs.

ID.—EXCUSE OF TENDER.—A statement by the beneficiary to the trustee
that he wanted the property so bought by the latter and that he
was ready to pay for it, and the reply of the latter that he was
going to keep it for himself, rendered unnecessary a formal tender
by the beneficiary of his portion of the purchase price as a condi-
tion precedent to his right to maintain an action to enforce his rights.

ID.—PARTNERSHIP CONCERNING PARTICULAR LANDS.—One who is a gen-
eral partner in the real estate business may enter into a particular
partnership with a third person relating to a particular piece of
land.

APPEAL from a judgment of the Superior Court of Los
Angeles County. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

Jones & Weller, and J. S. Chapman, for Appellant.

O. B. Carter, for Respondent.

SHAW, J.—Plaintiff began this action to obtain a decree
declaring that the defendant holds title to an undivided one
half of a certain lot 14 in block 93, fully described in the
CL Cal.—50

complaint, in trust for the plaintiff, for an accounting of the money advanced by the defendant in the purchase thereof, and to compel the defendant, upon payment to him by the plaintiff of the amount advanced on behalf of the plaintiff by him, to convey to plaintiff said one-half interest. The court below granted a nonsuit at the close of the plaintiff's evidence and rendered judgment thereon in favor of the defendant. The plaintiff appeals. The evidence is contained in a bill of exceptions.

The complaint alleges that the plaintiff and defendant entered into an agreement to purchase certain real property situated in San Pedro, in Los Angeles County, including the said lot 14, and that it was agreed between them that all of said property should be purchased on joint account and title thereto taken by one Lydia B. Shields, who should hold the same for the joint benefit of the plaintiff and defendant; that each should pay one half of the purchase price therefor and each should be the owner of an undivided one-half interest therein; that the lands consisted of two parcels, both of which it was agreed were necessary for the purpose for which the lands were to be purchased, one parcel being the said lot 14, and the other the remaining lands. It is further alleged that in pursuance of the agreement, the plaintiff and defendant purchased the second parcel and each paid one half of the price thereof; that the defendant went to San Pedro to buy the lot 14, in pursuance of the agreement; that he did purchase it and paid the price therefor, but that instead of taking the title in the name of Lydia B. Shields for their joint use, as agreed, the defendant caused the title to be conveyed to himself alone and thereupon claimed the same as his own property, and has ever since claimed the whole of said lot as his own and asserted that the plaintiff has no interest therein, or in any part thereof. It is also averred that the plaintiff has at all times been ready, able, and willing to repay to the defendant the one half of the money expended by the defendant in buying said lot; that he tendered the same to the defendant before suit, and that plaintiff offers to deposit the same in court, upon the conveyance to him of an undivided one half of the lot.

The effect of the agreement alleged was to make the plaintiff and defendant partners in the enterprise of buying and

holding the property which was the subject of the agreement. It is not alleged that the agreement was in writing, and the evidence shows that it was made by parol and not in writing. It is settled by the decisions in this state that a partnership for the purpose of buying, holding, and selling lands may be formed by an agreement resting in parol only, and that such parol agreement is valid. (*Bates* v. *Babcock,* 95 Cal. 479, 484, [29 Am. St. Rep. 133, 30 Pac. 605]; *Coward* v. *Clanton,* 79 Cal. 26, [21 Pac. 359]. See, also, *Holmes* v. *McCray,* 51 Ind. 358, [19 Am. Rep. 735]; *Snyder* v. *Wolford,* 33 Minn. 175, [53 Am. Rep. 22, 22 N. W. 254].)

The existence of the partnership between them placed them in confidential relations toward each other, with respect to the property which was the subject of the agreement. Each occupied the position of a trustee to the other with regard to all the partnership transactions, including the transactions contemplated by the firm and constituting the object or purpose for which the partnership was formed. When Willmon undertook to accomplish for the firm the purchase of lot 14, he was acting as agent and trustee of the plaintiff, and, in contemplation of law, the plaintiff was the beneficiary of that trust, with relation to his portion of the property. "In all matters connected with his trust, a trustee is bound to act in the highest good faith toward his beneficiary." (Civ. Code, sec. 2228.) He cannot "use or deal with the trust property for his own profit, or for any other purpose unconnected with the trust, in any manner." (Civ. Code, sec. 2229.) When Willmon succeeded in procuring the option to purchase lot 14, he was acting for the firm, and the right to purchase the property became trust property in his hands, or under his control. Under the principles above stated, he could not thereupon appropriate the trust property to his own use, nor deal with it otherwise than for the benefit of the partnership. The trust arising upon this transaction was not technically a resulting trust, and the decisions to the effect that a resulting trust does not arise unless the beneficiary has paid the price, or some other valuable consideration on the faith of the transaction, do not apply to the case. The trust imposed upon the defendant here is of the class known as constructive trusts. It may be created in property, although the person sought to be charged as trustee bought

and paid for it with his own means, as where a guardian buys directly from his ward, or an administrator purchases from an heir the property of the estate. In such cases the beneficiary of the constructive trust may tender to the defendant and offer to pay into court for the trustee whatever may be found just and equitable, and demand a reconveyance from the trustee, to be delivered on payment of the money. The fact of a previous tender or payment is usually important only to the determination of the question whether the plaintiff or the defendant shall recover costs. (*Gray* v. *Dougherty,* 25 Cal. 282.) At the time Willmon obtained this lot, the other property had been purchased and paid for by the firm, and the plaintiff had assisted in obtaining information about the ownership of the lot in question and had paid the railroad fare for the trip of Willmon to find the person holding the option and had otherwise contributed to that part of the proposed purchase. The relations were such that Willmon could not take the property without allowing the plaintiff to share therein according to the partnership agreement. It was gained by the violation of a trust. (Civ. Code, sec. 2224; *Rose* v. *Hayden,* 35 Kan. 106, [57 Am. Rep. 145, 10 Pac. 556]; *Case* v. *Carroll,* 35 N. Y. 388; *Manning* v. *Hayden,* 5 Saw. 360, [16 Fed. Cas. 653, No. 9043].)

Under the rules governing the consideration of evidence on a motion for nonsuit, the evidence was sufficient to sustain the plaintiff's case. The testimony of the plaintiff was to the effect that the parties decided to buy the whole of the property because of its frontage on the bay of San Pedro and its supposed advantages for wharfage purposes, and that lot 14 was necessary, as it enabled them "to control the situation there"; that they thereupon agreed to buy all the property for their joint use and that each should pay one half the price; that they bought and paid for the other lots and had the title taken as agreed, in the name of Lydia B. Shields; that there was some difficulty in finding the name of the owner of lot 14, but plaintiff ascertained it, and that Willmon thereupon wrote to her at plaintiff's suggestion, and obtained an answer from her saying that she had given an option on it to some one in San Pedro, but not disclosing his name; that thereupon Willmon, at plaintiff's request, and at plaintiff's expense for railroad fare, made two trips to

San Pedro for the purpose of finding the person holding the option; that upon the second trip he succeeded in finding the man, bought the property, paid for it with his own funds, took title thereto in his own name, and that he thereupon reported the fact to plaintiff and declared that it was his own property and that the plaintiff had no interest in that part of the transaction. Plaintiff thereupon "made it plain to Mr. Willmon that (he) wanted the property and that (he) was ready to pay for it," but Willmon told him he need not say anything more about it, that he was going to keep the property, and walked out of the office where the conversation took place.

The conduct of the defendant above recited made it unnecessary for the plaintiff to go further and make a formal tender of one half of the purchase money in furtherance of his claim as a condition precedent to the right to maintain an action to enforce his rights.

It is claimed that the decision of the court below was justified by the testimony of the plaintiff on cross-examination. At the close of the cross-examination, as it appears in the record, the plaintiff testified as follows: "The defendant and I were not partners during any of these transactions, but during all of said time Mr. Sherwood was and still is my partner in the real estate business." It is evident that the plaintiff was here speaking of a general partnership and not of the special agreement with regard to the property in controversy, and that this testimony was not contradictory of, or inconsistent with, his previous testimony as to the facts concerning the agreement between himself and Willmon. The fact that he had a general partner, with whom he was engaged in the real estate business, did not prevent him from entering into a particular partnership with Willmon relating to a particular lot, or lots, of land, to buy and sell the same for their joint benefit, or to engage in any other joint enterprise concerning such lands.

The motion for a nonsuit should have been denied.

The judgment is reversed and the cause remanded to the court below for further proceedings.

Angellotti, J., Lorigan, J., Sloss, J., and Henshaw, J., concurred.