[L. A. No. 2248.   Department One.—December 23, 1909.]

# WILLIAM LLEWELYN, Appellant, v. ADOLPH LEVI, Respondent.

PARTNERSHIP—AGREEMENT TO SELL LAND AND SHARE PROFITS—AGREEMENT BETWEEN VENDOR AND VENDEE.—An agreement between the parties to a contract for the sale of land for a resale of the property during the life of the contract at an enhanced minimum price, and for a division of the profits of any resale that could be made during that period at the price limited or for a greater price, constituted them partners during that time in the enterprise of a resale of the property at a profit, with the proviso that no resale should be made for less than the minimum price stipulated for.

ID.—OBLIGATIONS OF PARTNERS TO EACH OTHER.—Partners are trustees for each other, and in all proceedings connected with the conduct of the partnership every partner is bound to act in the highest good faith to his copartner, and may not obtain any advantage over him in the partnership affairs by the slightest misrepresentation,

concealment, threat, or adverse pressure of any kind. A partner has no right to deal with the partnership property other than for the sole benefit of the partnership.

ID.—REASONABLE EFFORT OF PARTNER TO MAKE SALE—LIABILITY FOR NOT MAKING EFFORT TO SELL.—One of such partners, who had by arrangement with the other, assumed the burden of endeavoring to make the resale, and had promised to use his best endeavors to sell the property during the life of the agreement for the highest price obtainable, was under the obligation to make all reasonable and proper effort to make such a sale during that time, and had no right to refrain from selling for the best price obtainable, if it exceeded the minimum fixed by the agreement, for the reason that he thought the property was worth more than the amount offered. If he did so abstain from making such a sale, he was guilty of fraud against his copartner and liable to him for the damage caused thereby.

ID.—CONTINUANCE OF PARTNER'S OBLIGATION—PURCHASE OF PARTNERSHIP PROPERTY BY PARTNER.—Such obligation continued during the period to which the partnership was limited, notwithstanding the copartner had, in assenting to the terms of a sale to a third person proposed by his partner, expressed the opinion that the property might bring more later. Such assent, if the sale to the third person was not made, did not release the partner from the necessity of making further effort to sell for a higher price, nor give him the right to elect to close the partnership transaction and retain the property for himself on the same terms. If he does so, he is liable to account to his copartner upon the theory of a resale made for the highest sum that he might have obtained from a sale made during the period of the partnership, if he had made all reasonable and fair efforts to sell.

ID.—SETTLEMENT OF PARTNERSHIP AFFAIRS—FRAUDULENT REPRESENTATIONS.—The liability of the partner to so account is not released by a settlement of the partnership affairs, after the expiration of the time limited for the partnership, if such settlement was procured through the false representations of the partner as to his inability to sell for a higher price.

APPEAL from a judgment of the Superior Court of San Diego County and from an order refusing a new trial. E. S. Torrance, Judge.

The facts are stated in the opinion of the court.

J. Wade McDonald, for Appellant.

Collier, Smith & Höff, and Sam Ferry Smith, for Respondent.

ANGELLOTTI, J.—This is an appeal from a judgment in favor of defendant, and an order denying plaintiff's motion for a new trial.

The action was one to obtain judgment setting aside a settlement of their differences previously had between the parties, on the ground that the same was procured by fraudulent misrepresentations on the part of defendant, and for the amount of five thousand dollars alleged to be the true amount due from defendant to plaintiff.

In view of the condition of the pleadings and certain unassailed findings of the trial court there can be no dispute as to certain material facts.

On July 12, 1906, plaintiff was the owner of certain real property in the city of San Diego. On that day, he entered into an agreement with defendant in regard to said property, evidenced by two writings signed by both parties.

One of these was an agreement for the sale of the property by plaintiff to defendant, for ten thousand dollars, payable twenty-five hundred dollars cash, the receipt whereof was acknowledged, twenty-five hundred dollars within thirty days, and five thousand dollars "on or before the 1st day of January, A. D., 1907." This agreement recited that plaintiff had executed a deed to defendant, to be held in escrow by the First National Bank of San Diego, for delivery to defendant if he paid to the bank or plaintiff twenty-five hundred dollars on or before thirty days from July 12, 1906, and five thousand dollars on or before January 1, 1907, with interest, and if such payments were not made the deed was to be redelivered to plaintiff. It was further provided therein that plaintiff was to have the use and occupancy of the premises until January 1, 1907, paying therefor forty dollars per month from August 1, 1906.

The other writing was an agreement between defendant, as party of the first part, and plaintiff, as party of the second part, which, after reciting the sale by plaintiff to defendant and the deposit of the deed in escrow, and, further, "whereas, said parties are to share in the profits of a sale of said property, if sold prior to the first day of January, A. D., 1907," provided: "It is therefore understood by and between said parties, that the said property may be sold at any time before the first day of January, A. D., 1907, for a sum of not less

CLVII Cal.—3

than twelve thousand dollars, and if so sold, that out of the proceeds of said sale said sum of ten thousand dollars as aforesaid shall be paid to the said party of the first part, together with interest thereon from this date, at the rate of 6 per cent per annum, and all sums over said ten thousand dollars and said 6 per cent per annum (exclusive of expenses of sale) are to be divided equally between said parties. That is to say, to the said party of the first part one half thereof, and to said party of the second part one half thereof. It is further understood and agreed, that if a sale of said premises is not made prior to the 1st day of January, A. D., 1907, that all the interest, rights and equities of said party of the second part under this agreement shall cease, end and determine."

At the time of the execution of these agreements, it was understood between the parties that plaintiff was intending to leave San Diego County and go into the northern part of the state, and the defendant "verbally promised and agreed that he would use his best endeavors to sell said property during the life of said agreements for the highest price obtainable therefor, and said plaintiff did leave said county and remained away therefrom continuously, except for a period of two weeks during the latter part of the month of August and the early part of the month of September, and for about two days in the month of November, 1906, during which visits similar conversations to those had at the time of the execution of said agreements were had between said parties."

The deed was deposited in escrow as provided. On August 22, 1906, defendant paid to the bank the twenty-five hundred dollars installment and on December 24, 1906, he paid to the bank the five thousand dollars installment, whereupon the deed was delivered to him.

It is alleged in the complaint and must be deemed admitted by the form of denial in the answer, that during the latter part of the month of December, 1906, much of the property in the city of San Diego made a rapid and permanent increase in value and price, and that this property had attained a market and selling value of practically twenty thousand dollars. There is no finding on this, but the evidence is all one way to the effect that this property had a market value of twenty thousand dollars during the last twelve or fourteen days of December, 1906.

On December 18, 1906, Charles S. Hardy made, through one Walsh, a real estate agent, a cash offer of fifteen thousand dollars for this property, less the agent's commission of five per cent. Defendant, on receiving this offer telegraphed plaintiff as follows:—

"W. LLEWELYN,

Asti, Sonoma Co., Cal.

"Have sold lots fifteen thousand ($15,000) dollars. Are you satisfied? Answer quick.

"ADOLPH LEVI."

On receiving this message, plaintiff, on December 20, 1906, telegraphed defendant as follows:—

"A. LEVI,

"San Diego, Cal.

"Satisfied. Sell, though might bring more later.

"W. LLEWELYN."

Defendant thereupon refused to accept Mr. Hardy's offer "for the reason that he believed the same to be worth more money," and offered it to Hardy for twenty thousand dollars, which offer was not accepted. Defendant never received any *bona fide* cash offer other than Mr. Hardy's fifteen-thousand-dollar offer. On December 24, 1906, according to the findings, he "elected to take said property to himself" for the sum of fifteen thousand dollars, believing, the court found, that he had a legal right to do so, inasmuch as plaintiff had indicated his willingness to sell for that sum. He apparently did not notify plaintiff of his "election." Plaintiff returned to San Diego in January, 1907. He was informed by defendant that the offer of fifteen thousand dollars by Mr. Hardy had been withdrawn by the purchaser because of the delay in the receipt by defendant of plaintiff's reply to the telegram, and that he had not been able to sell the property prior to January 1st for any sum greater than fifteen thousand dollars. He said that he was willing to take the property himself at the sum of fifteen thousand dollars, and would pay plaintiff one half the difference between that price and ten thousand dollars, provided plaintiff would allow defendant one half of the commission which would have been paid to a real estate agent for making the sale at fifteen thousand dollars. Plaintiff believed and relied on all the statements of defendant and had no knowl-

edge whatever to the contrary, and relying thereon, agreed
to a settlement. The defendant gave to plaintiff his promis-
sory note for $2250, and plaintiff executed and delivered to
defendant a writing reciting that the parties "have this day
settled all matters and differences between them, arising out
of the sale," etc., except a certain matter of taxes, which has
since been settled.

. It was substantially alleged in the complaint that the prop-
erty could have been sold for twenty thousand dollars or
more, between the fifteenth day of December, 1906, and the
first day of January, 1907, if the defendant had made any
reasonable and fair effort to so sell it, and that the defendant
failed to make any reasonable or proper effort to sell it for
twenty thousand dollars, or any other sum or amount whatever
above the sum of fifteen thousand dollars, after December
18, 1906, and before January 1, 1907. All this was denied by
the answer. The trial court failed to find on the issue thus
made, although there was evidence which would have suf-
ficiently sustained a finding in accord with the allegations of
the complaint. The failure of the trial court to make any
finding on this issue is assigned as a particular in which the
decision is against law.

Plaintiff sought by this action to recover the amount in
which he had been damaged by the alleged fraudulent failure
of defendant to perform his agreement.

In view of the facts stated, we are satisfied that the issue
last referred to was most material, and that owing to the
failure of the trial court to find thereon, a new trial must
be had.

The intent of the agreement of the parties is clear and
unmistakable. Plaintiff's views as to the probable real value
of his property were such that he was unwilling to part with
it for ten thousand dollars except upon the condition specified
in the second paper, and defendant's consent to this condition
was, of course, a material part of the consideration for the
agreement to sell. That condition was, in substance, that the
plaintiff and defendant were to share equally in the profits of
any sale that could be made of the property prior to January
1, 1907, for twelve thousand dollars or more. The effect of
this was to constitute them partners until January 1, 1907, in
the enterprise of a resale of this property at a profit for their

mutual benefit, with the proviso that no resale was to be made
for less than twelve thousand dollars. It was the understand-
ing and agreement of the parties, relied on implicitly by plain-
tiff, that, owing to the proposed absence of plaintiff, the
defendant was to assume the burden of endeavoring to make
such sale, and defendant promised "that he would use his best
endeavors to sell said property during the life of said agree-
ments for the highest price obtainable." Partners are trustees
for each other, and in all proceedings connected with the
conduct of the partnership every partner is bound to act in·
the highest good faith to his copartner and may not obtain
any advantage over him in the partnership affairs by the
slightest misrepresentation, concealment, threat or adverse
pressure of any kind (Civ. Code, secs. 2410, 2411). A part-
ner has no right to deal with partnership property other than
for the sole benefit of the partnership (*Koyer* v. *Willmon,*
150 Cal. 785, [90 Pac. 135]). Under the agreement it was
the plain duty of defendant to plaintiff to make all reason-
able and proper effort to sell the property prior to January
1, 1907, for the best price obtainable. He had no right to
refrain from selling for the best price obtainable (if that price
exceeded the minimum fixed by the agreement) for the reason
that he thought the property was worth more than the amount
offered. If he could by reasonable and proper effort sell for
twelve thousand dollars or more prior to January 1, 1907, he
must do so for the common profit of himself and his partner,
and it was his plain duty to his partner to obtain the best
price which was, in his judgment, obtainable. He could not
abstain from doing this for the purpose of making a greater
profit for himself. If he did so abstain, he would be guilty
of fraud against his copartner and liable to him for the dam-
age caused thereby. · His obligation in this regard continued
to January 1, 1907, notwithstanding the telegram from plain-
tiff relative to Mr. Hardy's offer. There appears to be some
claim that inasmuch as plaintiff by his telegram signified his
willingness that the offer of fifteen thousand dollars be ac-
cepted, defendant was released from the necessity of making
further effort to sell for a higher price, and given the right
to elect to close the partnership transaction and retain the
property himself upon the theory of a resale for fifteen thous-
and dollars, although he then believed the property to be

worth in the market more than that sum, which is what the
court finds he did.  But plaintiff had not given his consent
to any such course.  He had done no more than to indicate
his assent that his partner might, if he thought it best for
their mutual interests, sell the property to some third party
for the sum of fifteen thousand dollars, and this assent was
given in response to a communication from defendant which
was calculated to impress plaintiff with the belief that de-
fendant deemed it best for their common interest that such
sale to a third person should be consummated.  When defend-
ant refused to accept the fifteen-thousand-dollar offer, the
obligation created by the partnership agreement continued to
exist.  If defendant thenceforth secretly repudiated his trust,
and willfully refrained from further effort to sell for the
benefit of the partnership, with the intention and for the pur-
pose of making a greater profit for himself, it appears clear
that he should be held liable to account to his partner upon
the theory of a resale made for the highest sum that he would
have obtained for the property prior to January 1, 1907, if
he had made all reasonable and fair efforts to sell it.  The
damage to plaintiff was the amount of which he was deprived
by the failure of defendant to make such a sale.  We think the
principles enunciated in _King_ v. _Wise,_ 43 Cal. 628; _Koyer_ v.
_Willmon,_ 150 Cal. 785, [90 Pac. 135], and _Calmon_ v. _Saraille,_
142 Cal. 638, 642, [76 Pac. 486], require the conclusion we
have reached.

In the absence of a finding upon the issue we have been
discussing, the subsequent settlement between the parties of
their differences cannot avail defendant.  According to the
findings said settlement was procured by the positive state-
ment of defendant to plaintiff that the offer of fifteen thous-
and dollars had been withdrawn by the proposed purchaser
"because of the delay in the receipt by the defendant of
plaintiff's reply to said telegram," which statement it appears
from what has already been said was untrue, and by the fur-
ther material positive statement of defendant that he had not
been able to sell said property to any person prior to the
first day of January, 1907, for any sum greater than fifteen
thousand dollars, as to the truth of which we have no find-
ing, although that matter was directly in issue under the
pleadings.

We consider it unnecessary for the purpose of this appeal to discuss the other points made, further than to say that we cannot, upon the record, order judgment entered for plaintiff upon the findings. Defendant's liability, if any, for any sum in excess of what would have been realized by plaintiff upon a resale for fifteen thousand dollars, depends upon the determination of the question whether, by reasonable and proper effort defendant could have made a sale for any higher sum, and if so, then for what amount. This matter, as we have seen, is not settled by the findings as they stand.

The judgment and order denying a new trial are reversed.

Shaw, J., Sloss, J., Lorigan, J., Melvin, J., and Henshaw, J., concurred.