[Sac. No. 5776.  In Bank.  Aug. 19, 1947.]

HARRY A. MAZZERA, Appellant, v. ED WOLF et al., Respondents.

Gumpert & Mazzera, Charles A. Zeller, J. Calvert Snyder and C. Ray Robinson for Appellant.

O. C. Parkinson for Respondents.

GIBSON, C. J.—Plaintiff has appealed from a judgment decreeing that defendants are the owners of a vacant lot, 50 feet in width, which lies between two pieces of property separately owned by the respective parties.

The complaint alleged that plaintiff and defendants orally agreed that defendants, who are husband and wife, were to purchase the lot for the mutual benefit of the parties and to convey an undivided one-half interest to plaintiff upon payment of one-half of the costs, and that defendants purchased the lot but refused to accept plaintiff's tender of half the costs or to make a conveyance. A second count was in the usual form of a quiet title action. Plaintiff asked that a trust be decreed as to the one-half interest and that he be adjudged the owner thereof.

Defendant Ed Wolf testified that he met plaintiff Mazzera on the lot in April, 1944. They had not become acquainted until shortly before this date, and they had not had any prior business transactions, except that Wolf, who was renting the lot, permitted Mazzera to use a portion of it for storing materials at a monthly rental of $10. Mazzera asked Wolf why he did not buy the lot, to which he replied that the owners wanted too much for it. Mazzera then said, "Buy it for $2,500.00, but don't pay any more than $2,500.00, and then we will go fifty-fifty,". Wolf answered, "All right." However, nothing was done about purchasing the lot until sometime in October, when Wolf received a letter from one of the owners asking him to make an offer for the lot. He offered $2,500, which was refused, and various other offers and counteroffers were made. Finally, during the latter part of November, an agreement was made with the owners for a sale at $4,500, but the deeds to Wolf and his wife were not executed and delivered until February. The agreed purchase price was paid by Wolf from community funds, and no part thereof was furnished by Mazzera. There was no further conversation between Mazzera and Wolf after the one that took place in April until Mazzera learned sometime in November that Wolf had arranged to buy the lot. Mazzera then asked Wolf if the purchase was to be "fifty-fifty." Wolf replied it was not, saying: "I paid $4,500.00 which was not the $2,500.00 that I said yes to." Mazzera did not then offer to pay half the price, but knowing that Wolf had made no deposit, Mazzera said he was going to call the owners and "raise the ante." Wolf told him to "go ahead."

Mazzera's version of the April conversation differed from that of Wolf in several particulars. He testified that Wolf said he was negotiating to buy the lot, and he understood that Mazzera was also trying to buy it. Mazzera replied that he was interested but the owners wanted too much for it. He then said to Wolf: "There is no need for you and I cutting each other's throat in bidding for this property. . . . Why don't we buy it together in partnership; I will take an undivided half and you take an undivided half. . . . That way we won't be bidding against each other." Wolf said "okay" but to let him do the bidding and buy it in his own name. Mazzera agreed and instructed Wolf to start the bidding at $2,500. He also told Wolf that his tenant, Dye, could use the south 25 feet of the lot and Wolf could use the remaining 25 feet. There was a conflict in the testimony as to when the parties became acquainted, whether Dye was present at this conversation, whether the parties again discussed the lot before Wolf bought it, and whether Mazzera offered to pay half the cost upon learning of the purchase. There is also testimony that Wolf subsequently told Dye that they were "just talking and kidding" at the time of the April conversation.

The court found as follows: Neither of the parties had any interest in or business connection with the operations conducted on the property of the other. In April, 1944, they met casually on the lot and in the course of a general conversation Mazzera proposed that Wolf endeavor to purchase the lot, taking title in his own name, and that they would then go fifty-fifty in the property, each taking an undivided one-half interest. To this proposal Wolf assented, but he took no steps toward purchasing the property until one of the owners wrote him in October urging him to make an offer for the lot. An offer of $2,500 was made and refused, and various other offers and counteroffers were made. Finally, a sale was agreed at a price of $4,500, and the agreed purchase price was paid by Wolf and his wife from their own funds. No part of the price was furnished by Mazzera, although he offered to pay one-half of the expenditures and made a deposit in court. Wolf refused to accept any money or to make a conveyance.

The trial court concluded that Wolf and his wife were the owners of the lot, that the April conversation did not create an enforceable contract, and that the agreement was barred by the statute of frauds (Civ. Code, § 1624, subd. 4, and Code

Civ. Proc., § 1973, subd. 4). It also concluded that no partnership existed between the parties before or at the time of that conversation and none was formed by reason of that conversation or by their subsequent conduct, that no trust was created in the property by the oral conversation or by the conduct of the parties, and that Wolf and his wife were entitled to have their title quieted as against Mazzera's claims.

Mazzera seeks to avoid the bar of the statute of frauds by contending that the oral agreement had the effect of making the parties partners in the enterprise of buying and holding the lot, and that the existence of the partnership relationship placed the parties in a confidential relation and made Wolf a trustee of a constructive trust with respect to his purchase of the lot. He further contends that Wolf's refusal to perform the agreement was a violation of his trust duties, and that such an oral agreement is not required to be in writing.

A constructive trust may be imposed when a party has acquired property to which he is not justly entitled, if it was obtained by actual fraud, mistake or the like, or by constructive fraud through the violation of some fiduciary or confidential relationship. (*Crosby* v. *Clark*, 132 Cal. 1 [63 P. 1022] ; *Crabtree* v. *Potter*, 150 Cal. 710 [89 P. 971] ; *Koyer* v. *Willmon*, 150 Cal. 785 [90 P. 135] ; *Johnson* v. *Clark*, 7 Cal.2d 529 [61 P.2d 767].) Such a trust, imposed upon a partner, agent, or other fiduciary, arises by operation of law, and, accordingly, the statute of frauds is no bar. (Civ. Code, § 852; *Stromerson* v. *Averill*, 22 Cal.2d 808, 815 [141 P.2d 732] ; *Bastjan* v. *Bastjan*, 215 Cal. 662, 670 [12 P.2d 627].) But the mere failure to perform an oral promise to convey real property is not itself fraud, and the agreement will be held unenforceable under the statute of frauds in the absence of actual or constructive fraud. (*Rheingans* v. *Smith*, 161 Cal. 362, 366 [119 P. 494, Ann.Cas. 1913B 1140] ; *Feeney* v. *Howard*, 79 Cal. 525, 529 [21 P. 984, 12 Am.St.Rep. 162, 4 L.R.A. 826] ; *Ampuero* v. *Luce*, 68 Cal.App.2d 811, 817 [157 P.2d 899] ; *Bradley* v. *Duty*, 73 Cal.App.2d 522, 525 [166 P.2d 914].)

In the present case there is no claim of actual fraud, and Mazzera's theory, both at the trial and on appeal, is that the agreement created a partnership and gave rise to a confidential relationship, and that the violation of that relationship constituted constructive fraud. The evidence supports the trial court's determination that there was no partnership or

confidential relationship. According to Wolf they did not become acquainted until shortly before the April conversation. Further, there had been no prior partnership and no other business dealings between the parties except as to the temporary rental of a small part of the lot. There is no evidence that the parties ever contemplated going into a business or a joint venture whereby they would share profits and losses. They did not plan to use the lot together in a business enterprise, but, according to Mazzera's own testimony, the lot was to be physically divided, with his tenant using one-half and Wolf the remainder of the lot. As provided by section 2401(2) of the Civil Code, the ownership of property jointly or as tenants in common does not of itself establish a partnership, even if profits from the use of the property are shared. Also, in connection with the claim of a confidential relationship, it is significant that, according to Wolf's testimony, the parties did not discuss the matter between the time of the April conversation and the purchase of the lot some seven months later.

The situation in this case is materially different from that presented in *Koyer* v. *Willmon*, 150 Cal. 785 [90 P. 135], wherein this court reversed a judgment of nonsuit in an action to impose a trust upon an undivided one-half interest in a lot purchased by defendant. There the parties had orally agreed to buy certain waterfront properties for their joint use and benefit, with each party paying one-half the price. Several of the properties were acquired pursuant to the agreement and paid for by the parties before the lot in question, which was necessary for the venture, was bought. The parties were then engaged in the contemplated enterprise and, furthermore, the plaintiff had assisted in obtaining information about the ownership of the lot, paid the railroad fare for defendant to locate the holder of an option on the lot, and otherwise contributed to that part of the venture. The court held that since there was a sufficient showing of partnership and confidential relationship, plaintiff had made out a prima facie case. Whereas, in the present case, the trial court properly concluded that no partnership existed between Mazzera and Wolf.

It was not claimed at the trial, and it is not contended on appeal, that the April conversation constituted Wolf an agent to purchase the property, and there is no specific pleading or evidence that any agency was intended or created. Further, there is no specific finding of agency, and the finding relating to the April conversation is susceptible to the inter-

pretation, in support of the judgment, that there was merely an oral agreement that if defendant was able to buy the property he would convey an undivided one-half interest to plaintiff. Accordingly, in the absence of any confidential or fiduciary relationship, there was no more than an unenforceable oral agreement by the terms of which one party was to buy property with his own money and subsequently convey it to another, and no constructive trust arose. (*Neet* v. *Holmes,* 25 Cal.2d 447, 464 [154 P.2d 854]; *Lincoln* v. *Chamberlain,* 61 Cal.App. 399 [214 P. 1013]; *Bauman* v. *Wuest,* 32 Cal.App. 217, 219 [162 P. 434]; see 42 A.L.R. 10, 11.)

In 42 A.L.R., page 63, it is said:

"Ordinarily, oral agreements to join in the purchase of land do not give one party any enforceable right to claim the benefit of the purchase by the other. Viewed as agreements to transfer an interest in the land to be acquired, they are clearly within the Statute of Frauds; nor can they be given effect as a promise to hold for the benefit of another, save in those jurisdictions where express trusts need not be evidenced by writing. Except in those jurisdictions, therefore, the complainant cannot obtain relief unless he can establish a resulting trust, growing out of the use of his money in making the purchase, or a constructive trust, based upon the fraud of the defendant in procuring the title, or the abuse of some confidential relationship. The mere breach of the agreement that the complainant may share in the benefit of the purchase is not fraud in obtaining the title, and so will not give rise to a constructive trust."

Mazzera is likewise in no position to claim that there was a resulting trust in this case, not only because he did not urge this theory in his pleadings or at the trial, but also because there is no evidence of the existence of such a trust.

A resulting trust, or "intent-enforcing trust," may arise where the purchase price is paid by one person, in whole or in part, and the title is taken in the name of another. (Civ. Code, § 853; *Stewart* v. *Douglass,* 148 Cal. 511 [83 P. 699]; *Moultrie* v. *Wright,* 154 Cal. 520 [98 P. 257]; see *Stromerson* v. *Averill,* 22 Cal.2d 808 [141 P.2d 732].) Obviously, there is no such showing here, for Mazzera did not make any payment or advance any part of the consideration for the purchase.

The suggestion has been made, in this connection, that it is not essential that the payment should have been made by Mazzera with his own money, and that a resulting trust

may arise if the payment is made by the grantee, on behalf of the claimant, pursuant to an agreement to lend money to the claimant. The case of *Viner* v. *Untrecht*, 26 Cal.2d 261 [158 P.2d 3], relied upon in support of this argument, is clearly distinguishable. In that case, the trial court found that the purchaser expressly agreed to lend the money and to hold the property in trust, and the claimant was actually obligated to repay the money. In the present case there is no pleading, proof or finding that there was any agreement or intention that Wolf should lend money to Mazzera, and hence the essential element of payment of the purchase price by plaintiff is absent. It is clear from the trial court's findings that Wolf bought the land with his own money, not with Mazzera's, and that there was no agreement for any loan of money to Mazzera, but at most merely an unenforceable agreement to convey half the property upon payment by Mazzera of half the purchase price.

The judgment is affirmed.

Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent.

The issue presented in this case is whether any reasonable inference may be drawn other than one supporting, contrary to the trial court's judgment, a constructive trust or resulting trust.

There is no substantial dispute between Mazzera and Wolf that they had an oral agreement that Wolf should buy the property for the joint benefit of the parties. But in *addition to that, any conflict there may have been in the evidence with regard to that agreement has been resolved by the trial court in its findings.* It found: "Plaintiff and Defendant Ed Wolf met casually upon the . . . [Gilbeau] lot and held a general conversation with each other on various subjects, in the course of which conversation Plaintiff proposed to Defendant Ed Wolf that, he, Wolf, endeavor to purchase the lot from the owner, taking title in his own name, and that they would then go fifty fifty in the property, each taking an undivided one-half interest. To this proposal Defendant Ed Wolf assented." Fortifying that finding is the opinion of the trial judge. He there stated that the decision of the case *"turns on a question of law"* as the "essential facts, except for minor

variations in the testimony as to the exact words of the parties when the oral agreement was made" are not in dispute. While it is true the judge stated that he need not discuss whether there was a price limitation, he indicated that a *complete agreement was made* in which the minds of the parties met. The judge said in his memorandum opinion that: "The circumstances surrounding the conversation do not suggest that the parties were indulging in idle talk. It seems more than likely to the Court that neither misunderstood the other." This is in harmony with the *conclusions of law* which state that the *contract* (found in the findings of fact above quoted) was not enforceable because of the statute of frauds. Those conclusions also state that there was no partnership between the parties, and that there was no trust created by the agreement above mentioned. It thus appears that the court found that there was a meeting of the minds and an agreement was made, and that all of the legal theories were given general consideration in the conclusions of law.

The only possible inferences that may be drawn from the foregoing finding of an agreement is (1) that Wolf was acting as Mazzera's agent or (2) that Wolf was to advance the purchase money for a one-half interest in the property for Mazzera. A fair appraisal of the findings cannot, as asserted by the majority opinion, point to a third possible inference, namely, that Wolf, as an independent actor, was to purchase property and then sell a half interest to Mazzera. According to the finding the parties were to "go fifty-fifty" on the deal. That means that Wolf was *acting for Mazzera.* He was not acting independently as a speculative buyer of property which he would later sell to Mazzera. Where a person pursuant to an agreement acts for another we have a principal-agent relationship. "An agent is one who represents another, called principal, in dealings with third persons. Such representation is called agency." (Civ. Code, § 2295.) Under the agreement as found by the court, Wolf was to purchase the lot *for* Mazzera and himself. If that is not an agency relation it is hard to imagine one. But even if there is no agency the only other rational inference would be that Wolf would advance half of the purchase price as a loan to Mazzera.

The result is the same whether we have an agency or a loan. If it is an agency then the agent (Wolf) holds a half interest in the property as constructive trustee for the prin-

cipal (Mazzera) and the statute of frauds is inapplicable. (*Stromerson* v. *Averill,* 22 Cal.2d 808 [141 P.2d 732].) If Mazzera's half of the purchase price was to be advanced by Wolf then we have a loan from Wolf to Mazzera (the law implies a promise by Mazzera to pay the loan [*Viner* v. *Untrecht,* 26 Cal.2d 261, 270 [158 P.2d 3] ; *Brown* v. *Spencer,* 163 Cal. 589 [126 P. 493] ; *Couts* v. *Winston,* 153 Cal. 686 [96 P. 357]) and a resulting trust follows which is also exempt from the statute of frauds. (*Viner* v. *Untrecht, supra; Watson* v. *Poore,* 18 Cal.2d 302 [115 P.2d 478].)

Bearing upon the evidence of agency and the necessity of such a conclusion from the court's finding of the agreement, it is aptly said in *O'Connor* v. *Irvine,* 74 Cal. 435, 439 [16 P. 236] : "It was *not necessary* for the plaintiff to show the defendant agreed *in formal or express* language that he would make the purchase for Fair and others, and hold it for their benefit. It is sufficient if it was *mutually understood* between the parties that he was so acting in their behalf. What was said and done by the parties, so far as the evidence shows, is capable of only one interpretation, and establishes a perfect understanding between the parties, as above stated. Under such circumstances, *although the language used may not of itself show an express promise, it is the duty of the party whose services are sought, if he does not mean to act in accordance with the evident expectation of the parties with whom he is dealing, to expressly declare that he will not; otherwise his silent acquiescence is a fraud.*" (Emphasis added.) Likewise, in the instant case there is no need for an express agreement of agency. There is no magic in the use of the word agent or principal by the parties. Their conduct and agreement speak for themselves.

If it be conceded that under the evidence the trial court could have found either an agency or the lack of it or a loan or the absence of it, then it has failed to find upon material vital issues. It has found the agreement as above stated. If inferences either way may be drawn from that agreement, then the trial court should make such deduction and find the ultimate facts. This it has not done. It has gone part way and found the agreement, thus leaving the matter suspended without an actual determination. At least the case should be returned to the trial court to enable it to express itself on the subject.

Schauer, J., concurred.