[Civ. No. 6119.   Fourth Dist.   Aug. 31, 1959.]

ROSE JAFFE, as Administratrix, etc., Respondent, v. ROBERT D. HEFFNER et al., Appellants.

N. S. Crowley for Appellants.

R. S. Harrington and John G. Clock for Respondent.

GRIFFIN, P. J.—Plaintiff and respondent Rose Jaffe, as administratrix of the estate of her deceased husband, Guss Jaffe, brought this action against defendants and appellants Robert D. Heffner and Tudy N. Heffner, husband and wife, et al., to quiet title to an undivided one-half interest in certain described acreage in Imperial Valley (80 acres). Service was had upon defendants and appellants William R. McCall and Mary McCall. All appeared by answer, claimed title to all of said property, and prayed that title be quieted in them and that plaintiff be forever debarred from asserting any claim thereto. The trial court found generally in favor of plaintiff and against defendants, and accordingly entered judgment. The appeal is from this judgment.

Plaintiff claims she is entitled to this undivided one-half interest in the property because her husband, Guss Jaffe, an attorney, during his lifetime made an agreement with defendants Heffner, as joint adventurers, that they would buy this property and that each should own an undivided one-half interest therein; that such agreement was partially performed and that plaintiff, after her husband's death, continued the agreement.

Mr. Heffner and Mr. Jaffe had known each other since 1944. They were engaged in the purchasing of tax title property. Apparently, Heffner put up the money and Jaffe furnished the legal services. When the property was sold Heffner was repaid and the profits then divided equally. These parties held title to 30 parcels of property acquired under this agreement. Heffner testified that later, due to changes in the laws, about December 31, 1951, their agreement and method of purchasing such properties was changed to some extent; that some form of balance was struck on August 23, 1945; that on December 25, 1953, in two instances, Heffner and Jaffe each put up one-half of the purchase price of the property, and on various occasions each party caused lands to be put up for auction by advancing publication costs. About October, 1953, they looked at the parcel of property here involved and it was agreed that they would jointly purchase it at auction for $800 ($10 per acre) each to put up one-half of the purchase price if the bid did not exceed that amount; that $15 for advance publication was paid to the county tax collector of Imperial County from a joint partnership account they maintained in order to have the property advertised for public auction. They left their names and Jaffe's address with

the tax collector. The sale was advertised for March 2, 1954. Jaffe died on December 25, 1953. Notice of sale was forwarded to Mrs. Jaffe's residence and reached her on March 1, 1954, the day before the sale. She called Heffner and told him about the sale. There is a sharp conflict in the evidence as to their conversation and agreement in respect to the arrangements that followed. She testified she was present on several prior occasions when Jaffe and Heffner said they were going together and buy this property under a joint venture at the price agreed upon, and each would put up one-half of the amount and they would handle it the same as they had done on previous joint venture deals; that in this telephone conversation they agreed and Heffner said he was going to go ahead and bid on the property and buy it, and she asked him if she should give him any money; that he said he would go ahead and buy it in the same manner as Guss (Jaffe) would have done if he were alive; that he would ''go ahead and take care of it . . . buy it . . .''; that she believed from the conversation that he would take care of it, and after that she offered him the $400 and he refused this tender; that he bid in the property and took title in his name with his wife and his stepson and his wife, and later returned $7.50 to her as her one-half of the advanced cost of advertising.

Heffner testified he recognized the right of Mr. Jaffe, if he had been so inclined, to come in on the purchase of the property at $800 on a 50-50 basis; that he told Mrs. Jaffe if she wanted to come in on the deal she would have to put up one-half of the money; that he did not have all of the cash and she said she did not want the property, that she had enough, and she gave him no money.

The trial court found generally in favor of plaintiff and specifically found Jaffe and Heffner had agreed to purchase this property as and when it was offered for sale, and that each would contribute one-half of the purchase price; that this agreement was separate and apart from any prior agreements between them; that Heffner attended the sale and bid it in as indicated; that Mrs. Jaffe thereafter tendered $400 in payment of her husband's one-half interest and defendant refused to accept it; that Heffner repudiated his trust agreement that Jaffe was to have a one-half interest therein; and that Mrs. Jaffe deposited $425 in court for payment toward the purchase price. It then found plaintiff was the owner of an undivided one-half interest in the property; that de-

fendants and appellants held same in trust for her; and that they should be required to execute a proper deed of conveyance of it. Judgment was entered accordingly.

Although the testimony was highly conflicting, we are convinced there was sufficient substantial evidence to support the finding. ■ We cannot ignore the well-settled rule that it is not the function of the appellate court to weigh conflicting evidence. Findings will not be disturbed by an appellate court as long as there is sufficient substantial evidence in the record to sustain them. (*Crisci* v. *Sorci,* 115 CalApp.2d 76 [251 P.2d 383]; *Monastero* v. *Los Angeles Transit Co.,* 131 Cal.App.2d 156 [280 P.2d 187].)

■ Appellants' claim that the agreement to purchase the property is invalid because oral and therefore within the statute of frauds is untenable. In *Lasry* v. *Lederman,* 147 Cal.App.2d 480 [305 P.2d 663], it was held that a joint venture agreement to sell realty need not be in writing, and that such an undertaking by joint venturers is not within the statute of frauds. (See also *Koyer* v. *Willmon,* 150 Cal. 785 [90 P. 135]; and *James* v. *Herbert,* 149 Cal.App.2d 741 [309 P.2d 91].)

■ The rights and liabilities of joint adventurers as between themselves are governed by the rules and principles that apply to partnerships, and the relationship between joint adventurers is of a fiduciary character. Each owes to the other the duty of highest loyalty and utmost good faith. (*MacIsaac* v. *Pozzo,* 26 Cal.2d 809 [161 P.2d 449]; 28 Cal.Jur.2d p. 491, § 10.) ■ The nature of the title of a joint adventurer in joint venture assets is that of beneficiary of a constructive trust, so that a joint adventurer holding or acquiring title to property for a joint venture is a trustee for his coadventurers. This is so, though he buys and pays for the property with his own funds. (*Koyer* v. *Willmon,* 150 Cal. 785 [90 P. 135]; 28 Cal.Jur.2d 494, § 12.)

That Mr. Jaffe was deceased before the actual purchase of the property does not provide any comfort to appellants. In *Thompson* v. *Thompson,* 91 Cal.App. 554 [267 P. 375], it was held that a decedent's former partner and business associate was required to deal with the decedent's executor the same as if he were a fiduciary of the decedent, and upon acquiring property of the decedent by misrepresentation was the involuntary trustee for the heirs.

Some claim is made that defendants and appellants were

prejudiced when the trial court allowed plaintiff to amend the complaint during the trial to allege a constructive trust and to include defendants McCall under these allegations. The new amendment was consistent with the original cause of action alleged. It does not appear that any objection was made to the amendment at the time the case was tried on the issues thus presented and defendants' attorney proposed that a stipulation be entered to the effect that he be deemed to have answered the amended complaint and to have interposed an affirmative defense to it. ▮ A change by amendment to a complaint from one kind of relief to another is not a change in the cause of action if the transaction is the same. (*Peters* v. *Binnard,* 219 Cal. 141 [25 P.2d 834].) ▮ An amended complaint elaborating allegations in a preceding one, though adding additional misrepresentations, does not state a new cause of action. (*Von Schrader* v. *Milton,* 96 Cal.App. 192 [273 P. 1074].) ▮ The established policy in this state is that amendments to the pleadings may be made at any stage of the proceedings in furtherance of justice. (*Frost* v. *Witter,* 132 Cal. 421, 427 [64 P. 705, 84 Am.St.Rep. 53].) No prejudicial error resulted by the order allowing the amendment.

▮ It appears that about six months before Jaffe's death a controversy arose between him and Heffner about their respective properties. Heffner and his wife brought an action on July 20, 1953, against Jaffe for declaratory relief pertaining to the property listed by Heffner. This list did not include the Imperial Valley property here under discussion or any claimed interest therein and no finding or judgment was entered in respect to it. Heffner offered this judgment in evidence in the instant case as res judicata, claiming the parties did not therein list or make any claim to this property, and therefore plaintiff is now barred from making such claim. The court found against this contention and held that this transaction was a separate and distinct joint adventure agreement; that the Salton Sea property was not even mentioned in the former action and there was no determination of the issues in respect to that property. Although such record could be properly considered as bearing on the weight of the testimony of the respective parties, it did not determine the issues here presented. All of the necessary elements of the plea of res judicata are not present. (*Taylor* v. *Hawkinson,* 47 Cal.2d 893 [306 P.2d 797]; *Clark* v. *Lesher,* 46 Cal.2d 874 [299 P.2d 865].)

The claim of the McCalls that they were strangers to the transaction and were purchasers in good faith, having paid $400 for an undivided one-half interest therein, is not determinative of the action. They were close relatives of appellant Heffner, who was charged with knowledge of the terms of the agreement, as found by the trial court. ▪ It might well appear that when Heffner entered the bid and purchased the property he was acting as agent for his stepson. Under such circumstances there is a presumption that an agent performed his duty in communicating knowledge or information to his principal. (*Freeman* v. *Superior Court*, 44 Cal.2d 533 [282 P.2d 857] ; Witkin, California Evidence, p. 121.)

Heffner testified he bid and bought the property in his name and that of his son-in-law, and that each owned an undivided one-half interest therein. The court did find that plaintiff was entitled to an undivided one-half interest therein, but did not determine who owned the remaining undivided one-half interest, and it was not necessary to the decision.

Judgment affirmed.

Mussell, J., and Shepard, J., concurred.