[Civ. No. 10161. Third Dist. Jan. 25, 1962.]

MARVIN G. SADUGOR, Plaintiff and Respondent, v. THEODORE HOLSTEIN et al., Defendants and Appellants; BETTELEE SADUGOR et al., Cross-defendants and Respondents.

Wilmer W. Morse, Stanley J. Gale and Lawrence M. Goldstein for Defendants and Appellants.

Landis & Martin and Alvin Landis for Respondents.

SCHOTTKY, J.—Marvin G. Sadugor brought suit against Theodore Holstein, Blanche Holstein and Adele G. Cailleaud to establish a trust in a one-half interest in certain real property. The Holsteins filed an answer denying the material allegations of the complaint and also filed a cross-complaint to quiet title to said real property. The action was dismissed as to the defendant Adele G. Cailleaud, and following a trial judgment was entered in favor of plaintiff Sadugor. The Holsteins have appealed from said judgment.

Appellants' principal attack is upon the sufficiency of the evidence to support the judgment. Disregarding all conflicts in the evidence and indulging in all reasonable inferences to support the judgment, we shall summarize the evidence as shown by the record and found by the trial court.

In August 1958 Dr. Sadugor and Dr. Holstein entered into an oral agreement to purchase certain real property located in Sacramento County. The two men made an offer to purchase the property for $165,000. The offer was rejected and a second offer was made for $170,000. This offer was accepted by the seller.

While the offer was pending Dr. Holstein obtained a loan commitment for $100,000 from Adele G. Cailleaud. Dr. Sadugor had no knowledge of the loan nor knowledge that the property was to be security for the loan.

On December 12, 1958, Dr. Sadugor and Dr. Holstein had a conversation during which the former told the latter that on December 15, 1958 (the date of the closing of the escrow) he would have his $85,000 to deposit with the title company. Part of this money was to be raised from the proceeds of the sale of certain real property by a corporation of which Dr. Sadugor was a member.

On December 15, 1958, Dr. Sadugor had a telephone conversation with Dr. Holstein. According to Dr. Sadugor, Mr. Finger, the real estate agent who was handling the transaction, "called me on the phone and turned the phone over to Dr. Holstein who told me that the property, the ditch on the prop-

erty had no serious effect on the property and that we should go ahead and close the venture, if I would come down and bring my $85,000 to the title company.

"He also explained that he had a man from San Francisco there who was going to loan Dr. Holstein $100,000 on his half share of the property but the man would not loan the $100,000 unless I signed the deed of trust also. I told him that I would talk to my attorney first and I called Mr. Landis on the other phone while he held the phone; got the advice from my attorney that I should not go down and sign a note for $100,000 and deed of trust and bring $85,000 down to the title company. I told Dr. Holstein that and he said either I should take the whole property or he would take the whole property. I stated again that I would bring the $85,000 in cash there without any difficulty, but would not sign the note for $100,000 and deed of trust. I only wanted him to put up $85,000 cash as we agreed originally. He stated that he was going to take the property alone and that I was out of the picture, and the conversation ended abruptly."

Dr. Holstein then purchased the property in his own name. This action followed.

Among the findings made by the trial court were the following:

"7. That it is true that the plaintiff offered, on December 15, 1958, to deposit the sum of $85,000, in cash, and that plaintiff was ready, willing, and able to tender said sum.

"8. That it is true that the defendant THEODORE HOLSTEIN refused to permit plaintiff to join in said purchase of one-half of the purchase price and costs but demanded of plaintiff that he execute the note for said loan in the sum of $100,000 and also execute the deed of trust conveying said real property as security for said loan, and further demanded that the plaintiff contribute in cash the sum of $85,000, constituting one-half of the purchase price.

"9. That it is true that defendant THEODORE HOLSTEIN denied plaintiff the right to participate in the purchase of said real property."

Before discussing the specific contentions of appellants, we think it well to state certain rules of law which are applicable to the instant case.

 1. A partnership for the purpose of buying land may be formed by an oral agreement and such an agreement is valid. (*Koyer* v. *Willmon*, 150 Cal. 785 [90 P. 135] ; 2 Corbin on Contracts, § 411.)

2. If such a partnership is formed to purchase a particular parcel of land, each occupies the position of a trustee; and if one purchases the property for himself, he becomes a constructive trustee for the other to the extent of the latter's interest in the partnership. (*Koyer* v. *Willmon, supra*; see also Bogert on Trusts (2d ed.) § 488.)

3. No tender is required where one party to an agreement makes it known that he does not intend to perform upon compulsion. (*Gray* v. *Dougherty*, 25 Cal. 266, 280-281; *Koyer* v. *Willmon, supra*.)

Appellants' first contention is that there is no evidence in the record to show that respondent had $85,000 on December 15th and was able to perform. Part of the funds which respondent was to use were the funds due the AHG Corporation. Respondent testified he had the authority to use such funds and also that he had negotiated a loan for $15,000. This is sufficient to show ability to perform. The source of the funds that respondent was to use in completing his part of the transaction was no concern of appellants. The trial court was convinced and found that respondent was ready, willing and able to make the payment of the necessary $85,000 and that appellants denied respondent the right to participate in the purchase of said real property. We believe that the record presents a question of fact upon that issue and that the evidence, although highly conflicting, supports the findings of the trial court.

Appellants also claim the court erred in not finding whether Dr. Sadugor was able to perform without using the aforementioned funds. There is no merit in this contention. This finding is immaterial as long as respondent was able to perform.

Appellants also contend that relief should have been denied respondent because of "unclean hands," and any contrary findings are not supported by the evidence. This contention cannot be sustained. The principle sought to be invoked has been expressed as "he that hath committed inequity shall not have equity." It says that whenever a party seeking a remedy in equity has violated conscience or good faith then a court of equity will not offer him relief. Appellants contend that Dr. Sadugor's hands were unclean because he had entered into an agreement with third persons interested in the AHG Corporation whereby respondent could use the funds of the corporation for his portion of the purchase price of the property and in return the third persons would

participate as investors in respondent's share. Appellants assert that Dr. Holstein had told Dr. Sadugor that the property should be purchased by the two of them and that he did not like to deal with groups, but this was denied by Dr. Sadugor and the court found that it was not true. It is claimed that because other persons were financially interested in Dr. Sadugor's share the doctrine of unclean hands applies.

We do not believe that the court was required to hold that the agreement which would permit respondent to use the funds of the corporation was a fraud upon appellants. It was essentially an agreement permitting respondent to use certain money and an agreement that the lenders share in the profits. The court found ''That it is not true that the plaintiff wilfully or intentionally concealed from the defendant that plaintiff had entered into an agreement between himself and others pursuant to which any other parties became partners of the defendant THEODORE HOLSTEIN.'' This finding is supported by the record.

Appellants contend that the record shows there was no confidential relationship between the parties. They rely upon and quote the following language in *Mazzera* v. *Wolf*, 30 Cal.2d 531 [183 P.2d 649], at page 537:

''In 42 A.L.R., page 63, it is said:

'' 'Ordinarily, oral agreements to join in the purchase of land do not give one party any enforceable right to claim the benefit of the purchase by the other. Viewed as agreements to transfer an interest in the land to be acquired, they are clearly within the Statute of Frauds; nor can they be given effect as a promise to hold for the benefit of another, save in those jurisdictions where express trusts need not be evidenced by writing. Except in those jurisdictions, therefore, the complainant cannot obtain relief unless he can establish a resulting trust, growing out of the use of his money in making the purchase, or a constructive trust, based upon the fraud of the defendant in procuring the title, or the abuse of some confidential relationship. The mere breach of the agreement that the complainant may share in the benefit of the purchase is not fraud in obtaining the title, and so will not give rise to a constructive trust.' ''

However, we do not believe that the rule of the cited case is applicable to the instant case. Here the parties made a joint offer. Each advanced funds for the deposit accompanying the offer. They had orally agreed that each would put up one-half of the purchase price and that each would acquire a one-half

interest. This is a sufficient showing to support the decision of the trial court. As stated in *Epstein* v. *Stahl*, 176 Cal.App. 2d 53 [1 Cal.Rptr. 143], at page 57:

"The common definition of a joint venture is ' "a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation, or as an association of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge." ' (*Sime* v. *Malouf*, 95 Cal.App.2d 82, 95 [212 P.2d 946, 213 P.2d 788].) The relation of joint venturers is founded on contract. Whether the parties have created such a relationship as between themselves depends on their actual intention. The law requires little formality in the creation of a joint venture. The relationship may be created by oral agreement. (28 Cal.Jur. 2d 484, § 6.) The relationship between the parties is not to be determined by the label which the pleader gives to an agreement; it is to be determined by the ultimate facts pleaded. (*Smith* v. *Grove*, 47 Cal.App.2d 456, 461 [118 P.2d 324].)

". . . Whether an agreement to share profits is merely a measure of compensation for services, or whether it extends beyond and bestows ownership and interest in the profits themselves so as to constitute a joint venture, is a question of fact. (*Nelson* v. *Abraham*, 29 Cal.2d 745, 750 [177 P.2d 931]; *Milton Kauffman, Inc.* v. *Superior Court*, 94 Cal. App.2d 8, 17 [210 P.2d 88].) If there was an agreement for a joint venture, the parties assumed the status of fiduciaries and neither one would have a right, while the joint venture existed, to acquire the subject property to the exclusion of the other. (*Lasry* v. *Lederman*, 147 Cal.App.2d 480, 487 [305 P.2d 663].) A joint venturer holding the property for the joint venture is a trustee for his coventurer and this is so though he purchased the property with his own funds. (*Koyer* v. *Willmon*, 150 Cal. 785, 787 [90 P. 135]; *Lindner* v. *Friednash*, 160 Cal.App.2d 511, 517 [325 P.2d 612]; 28 Cal.Jur.2d 494, § 12.)" (See also *Jaffe* v. *Heffner*, 173 Cal.App.2d 512 [343 P.2d 374].)

Appellants have made an able and earnest argument in an effort to prove their contention that the evidence does not sustain the judgment. If the decision of the court had been in their favor, their argument would be very helpful in pointing out evidence in support of such decision; but in view of

the adverse decision of the trial court, the testimony pointed out and relied on by appellants merely accentuates the conflict in the testimony. Issues of fact must be determined by the trial court and an appellate tribunal is bound by the familiar rule that before it can be justified in reversing a judgment upon the ground of the insufficiency of the evidence, it must appear from the record that accepting the full force of the evidence, together with every inference favorable to the prevailing party which may reasonably be drawn therefrom, and excluding all evidence in conflict therewith it still appears that the law precludes such party from recovering a judgment. Applying this well-settled rule to the instant case, we are satisfied that the record amply supports the judgment.

No other points raised require discussion.

The judgment is affirmed.

Peek, P. J., and Pierce, J., concurred.

A petition for a rehearing was denied February 15, 1962, and appellants' petition for a hearing by the Supreme Court was denied March 21, 1962.