[L. A. No. 2461.   Department One.—June 10, 1910.]

## MUSICK CONSOLIDATED OIL COMPANY, Respondent, v. BURDETTE CHANDLER, Appellant, and ABRAHAM STONE et al., Respondents.

Partition of Placer Mine—Issue as to Partnership in Patent—Evidence.—In an action for partition of a placer mine, where the appellant claimed under a partnership alleged to have been created under a patent to the placer claim, whereby appellant's grantor and another person had agreed to share the expense of obtaining a half interest in the patent, and to become equal partners in such half of the property patented, the issue tendered as to the existence of such partnership was legitimate, and it was error to exclude competent oral evidence to show the creation of such partnership on the ground that the contract for the partnership was not in writing.

Id.—Partnership in Lands—Parol Agreement—Enforcement. — A partnership in lands may be formed by an agreement in parol. Such parol agreement is valid and may be enforced between the parties.

Id.—Partnership Interest Subject to Equal Reduction of Two Thirds for Development—Conveyance of Half of One Partner's Interest.—Where the whole partnership interest was subject to an equitable reduction of two thirds for an agreed development of the mine, but one of the partners, without reference thereto, conveyed

one half of his interest to a third party, the effect of such conveyance would depend on the grantee's knowledge of the partnership. If he knew it, he took subject to all equities, but if not, he held one eighth free from all equities, if he paid value therefor.

ID.—PROPOSED AMENDMENT TO ANSWER—MISTAKE IN DEED BY COPARTNER — NOTICE NOT CHARGED — PARTICULARS OF DISCOVERY NOT STATED.—Where a proposed amendment to the answer alleging a mistake in the deed of the copartner to the third party in intending to convey merely one half of the copartner's interest subject to the development contract, did not allege notice thereof to the grantee or give any particulars as to the discovery of the mistake, the refusal of the amendment cannot be held erroneous.

ID.—BASIS OF EQUITABLE RELIEF—LACHES.—The party who appeals to the conscience of the chancellor in support of a claim, when there has been laches in prosecuting it, or long acquiescence in the assertion of adverse rights, should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim, how he came to be so long ignorant of his rights, and how and when he first came to a knowledge of the matters alleged in his bill; otherwise the chancellor must refuse to consider the case upon his own showing, without inquiring whether there is a demurrer, or plea of the statute of limitations contained in the answer.

ID.—PREJUDICIAL ERROR APPARENT UPON RECORD.—Where without reference to the proposed amendment to the answer, or to any right to attack the deed of the half interest of the copartner, it appears that if proof of the copartnership had been received, appellant would be entitled to an additional one-forty-eighth interest in the land, which the judgment appealed from did not award to him, the judgment and order denying appellant a new trial must be reversed.

ID.—DIVISION OF PLACER CLAIM IN PARTITION—SALE.—The authorities are not uniform as to whether a placer mining claim may be divided by a surface partition, or whether a sale should be ordered. As the case must go back for new trial, and a different judgment may be had and a sale ordered, we express no opinion on this subject.

APPEAL from an interlocutory judgment of partition of the Superior Court of San Luis Obispo County and from an order denying a new trial. E. P. Unangst, Judge.

The facts are stated in the opinion of the court.

A. J. King, for Appellant.

M. E. C. Munday, and W. H. Spencer, for Plaintiff, Respondent.

C. P. Kaetzel, for Defendants, Respondents.

SHAW, J.—Appeals from an interlocutory judgment of partition and from an order denying Chandler's motion for new trial. The complaint asks partition of certain oil lands, known as the Musick Consolidated Petroleum and Asphalt Placer Mining Claim, containing some 718 acres. The court found that the plaintiff owns thirty-one forty-eighths of the land, that Burdette Chandler owns eight forty-eighths, that Bernard Sinsheimer owns six forty-eighths, and that Abraham Stone and four others, as heirs of Jacob Stone own three forty-eighths. (There were twenty average acres to be taken from the plaintiff's share and added to Chandler's share, concerning which there is no dispute.) Chandler claims, in addition, an interest of four forty-eighths, to be taken from the shares allotted to Sinsheimer and the Stone heirs.

Prior to October 23, 1899, the defendant Burdette Chandler and one A. B. Hasbrouck had become the owners of the lands in controversy, which at that date were unpatented. The principal controversy in the case arises over the claim of Chandler to an undivided four forty-eighths of the property. To facilitate an understanding of the points in the case we state the history of the title as disclosed in the record. On October 23, 1899, Hasbrouck and Chandler executed a contract to Parcels and his associates whereby it was agreed that the Parcels parties should within twelve months thereafter expend at least four thousand dollars in putting down oil wells for the development of the property and that in consideration of said work Hasbrouck and Chandler would convey to Parcels and his associates an undivided two-thirds interest in the land. On October 30, 1899, Parcels and Holden conveyed a one-forty-eighth interest to J. Alex. Brown, and on December 26, 1899, Brown conveyed the same to Jacob Stone. This interest still remains in the heirs of Stone and no controversy has arisen over it. Its effect was to reduce the interest of the successors of Parcels and others to thirty-one forty-eighths. The plaintiff company now holds this thirty-one forty-eighths. On May 19, 1902, the patent was issued from the United States to Chandler and Hasbrouck. On June 2, 1902, Hasbrouck conveyed to Jacob Stone an undivided one fourth interest and on the same day Stone conveyed to Bernard Sinsheimer an undivided one eighth interest in all the land. A dispute arose between Parcels and his associates, on the one

hand, and Hasbrouck and Chandler, on the other, concerning the performance of the Parcels contract. Parcels and his associates brought an action against Hasbrouck and Chandler and the persons then interested in the property to enforce their contract for the conveyance of the two thirds, alleging that they had performed the contract on their part. Judgment in that action was given in favor of the plaintiffs on February 9, 1907, and in pursuance thereof the undivided thirty-one forty-eighths of the land was conveyed to the plaintiffs in the action and they afterwards conveyed to plaintiff in this action. Jacob Stone died on August 5, 1905, and whatever interest he had in the property at that time has been distributed to his heirs above mentioned. While the action of Parcels *v.* Hasbrouck was on trial and before the decision was rendered, to wit, on January 18, 1907, Hasbrouck executed a deed purporting to convey to Chandler all his interest in the property. The disputed point in the case depends upon the effect of this conveyance.

For the purpose of showing that, at the time of this conveyance to Chandler, Hasbrouck still retained an interest in the land, the defendant Chandler filed a cross-complaint. Therein he alleged that on October 23, 1899, the Parcels contract was executed, stating its terms; that on June 2, 1902, Hasbrouck and Stone entered into a contract by which it was agreed that Stone should furnish one half, to wit: five hundred dollars, of the expense which Hasbrouck would have to pay or had paid to secure the patent from the United States, in consideration whereof Hasbrouck and Stone should become partners in the half interest in the property which Hasbrouck then held; that for the purpose of carrying out this agreement Stone paid the five hundred dollars and Hasbrouck executed the deed of date June 2, 1902, conveying to Stone a one-fourth interest in the property in controversy, and that they thereby became equal joint owners and copartners in the one-half interest in the land formerly held by Hasbrouck, and that when the contract to Parcels and others was enforced they remained the joint owners, as partners, of an undivided one sixth thereof.

If this partnership had been effected as thus alleged the result would be as claimed by Chandler, that is to say, Stone and Hasbrouck would be equal partners in the half interest

formerly held by Hasbrouck, and when the Parcels' contract
was enforced the two thirds thereby transferred to those
parties would be taken equally from the interests of both Stone
and Hasbrouck and they would remain equal partners in what
was left of the one half, namely,—a one-sixth interest. In
that case the subsequent conveyance of Hasbrouck to Chandler
would convey to Chandler an undivided one half of the one-
sixth interest belonging to the partnership of Stone and Has-
brouck and he would thus become the owner of an undivided
one-twelfth interest in the land. The effect of the conveyance
from Stone to Sinsheimer of an undivided one eighth of the
land on June 2, 1902, would depend on Sinsheimer's knowledge
of the equities between Hasbrouck and Stone. If he knew of
the partnership, he would take no greater interest than Stone
had to convey. If he was ignorant thereof and paid a valuable
consideration for the conveyance of one eighth, he would hold
the one eighth free from any equities existing between Stone
and Hasbrouck. That conveyance, however, included only
one eighth of the land. If its effect was to convey that interest
absolutely to Sinsheimer, there still remained the difference
between one eighth and one sixth, namely, two forty-eighths,
belonging to the partnership existing between Stone and Has-
brouck. The defendants who claim as heirs of Stone would
have no higher right than Stone himself possessed. The result
of this would be that this two-forty-eighths interest would
remain the partnership property of Hasbrouck and Stone's
heirs and it would follow that the deed from Hasbrouck to
Chandler would transfer to Chandler a one-forty-eighth in-
terest in the property. If the Sinsheimer deed was taken by
Sinsheimer with knowledge of the relations between Hasbrouck
and Stone the deed of Hasbrouck to Chandler would convey
to him the four-forty-eighths interest which he claims. If
there are partnership accounts to be settled, of course the firm
property should be set off in one body.

Upon the trial, Hasbrouck was called as a witness on behalf
of Chandler, and was asked to testify as to the partnership
alleged to exist betwen himself and Stone at the time of the
conveyance from Hasbrouck to Stone of the undivided one
fourth. Objection was made to this evidence upon the ground
that it was incompetent and immaterial and not the best evi-
dence. The objection was sustained. No evidence was allowed

to be introduced to prove the allegations of the cross-complaint of Chandler concerning the partnership between Stone and Hasbrouck in the lands in controversy. The court found that no such partnership existed and that the allegations of the cross-complaint relating thereto were untrue. This ruling and the finding are assigned as error.

We are satisfied that the issue tendered was a legitimate one and that the evidence offered was competent and material proof of the allegations. The objection that the agreement of partnership was not in writing is not well taken. A partnership in lands may be formed by an agreement in parol. Such parol agreement is valid and may be enforced between the parties. (*Koyer* v. *Wilmon,* 150 Cal. 787, [90 Pac. 135], and cases there cited.) The ruling of the court below seems to have been based upon the theory that no proof could be made of this character unless the agreement was in writing. In view of the decisions above referred to this theory was erroneous. The evidence should have been admitted.

There was no allegation that Sinsheimer received his conveyance from Stone of the undivided one eighth with notice of the partnership existing between Stone and Hasbrouck. An amendment to the answer of Chandler was offered at the time of the trial, alleging a mistake in the drafting of that conveyance, and claiming that the intention was to describe the property conveyed as the undivided one half of Hasbrouck's interest, instead of as the undivided one-fourth interest in the property. At the time this deed was executed, Hasbrouck owned the legal title to an undivided one half of the property, and the conveyance of one fourth would make Stone an equal partner, in so far as the legal title was concerned. It was, of course, subject to the Parcels contract. It was alleged that Stone understood the Parcels contract and took subject thereto. The court refused to allow the amendment stating the mistake. It did not allege notice on the part of Sinsheimer. Furthermore, it did not give any particulars concerning the discovery of the mistake. Whether the proposed amendment was rejected for this reason or not we cannot determine, but in view of the fact that the case must be reversed because of the refusal to receive the evidence of the partnership aforesaid and in view of the probability that some similar amendment may be offered before another trial, we think it proper to call attention

to the rule governing applications for such relief as stated in 5 Pomeroy's Equity Jurisprudence, section 36: "The party who appeals to the conscience of the chancellor in support of a claim, when there has been laches in prosecuting it, or long acquiescence in the assertion of adverse rights, should set forth in his bill specifically, what were the impediments to an earlier prosecution of his claim, how he came to be so long ignorant of his rights . . . and how and when he first came to a knowledge of the matters alleged in his bill; otherwise the chancellor must refuse to consider his case upon his own showing, without inquiring whether there is a demurrer or formal plea of the statute of limitations contained in the answer." Upon this condition of the record and the possibility that there may be evidence of notice on the part of Sinsheimer, we consider it inadvisable to express any opinion concerning his rights. Conceding that he had no notice and would take free from the equities arising from the partnership, the fact would still remain that if the partnership did exist, Chandler would have an undivided one-forty-eighth interest in the land and the judgment appealed from did not award it to him.

The court made an order that the property be divided by a surface partition and refused to order a sale. The appellant strenuously asserts that this sort of partition cannot be made in the case of mining claims. As the case must go back for trial and a different judgment may be had and a sale ordered, we do not express any opinion on this subject. We note, however, that the authorities are not uniform. It has been decided in this state that a mere mining right is not an estate which may be made the subject of a partition. (*Smith* v. *Cooley,* 65 Cal. 48, [2 Pac. 880].) It has also been decided that the question whether a placer mine can be divided according to area so as to make a just partition between tenants in common is a matter of fact for the trial court. (*Mitchell* v. *Cline,* 84 Cal. 418, [24 Pac. 164].) Other authorities expressing various opinions on the proposition are the following: *Hall* v. *Vernon,* 47 W. Va. 295, [81 Am. St. Rep. 791, 34 S. E. 764]; *Daingerfield* v. *Caldwell,* 151 Fed. 558, [81 C. C. A. 400]; *Smelting Co.* v. *Rucker,* 28 Fed. 223; *Conant* v. *Smith,* 1 Aiken, (Vt.) 67, [15 Am. Dec. 669]; *Lenfers* v. *Henke,* 73 Ill. 410, [24 Am. Rep. 263]; *Kemble* v. *Kemble,* 44 N. J. E. 454, [11 Atl. 733], *Adams* v. *Briggs,* 7 Cush. (Mass.) 366.

The judgment and order are reversed.

Angellotti, J., and Sloss, J., concurred.

Hearing in Bank denied.