[L. A. No. 11309. In Bank.—June 23, 1932.]

STEFANI BASTJAN, Plaintiff and Appellant, v. FRANK BASTJAN, Defendant and Appellant.

I. Henry Harris and Patrick F. Kirby for Plaintiff and Appellant.

George S. Hupp and Frank C. Hill for Defendant and Appellant.

PRESTON, J.—In this cause the opinion of Mr. Justice Sturtevant, heretofore rendered by the honorable District Court of Appeal for the First Appellate District, Division Two, is hereby adopted as a portion of the opinion of this court herein as follows, to wit:

"By their pleadings each party asked for a divorce and a division of properties. Each spouse accused the other of cruelty. The plaintiff set forth all properties held by both parties claiming to own a half interest in each. The defendant set forth all properties making the same claim except that he claimed as separate property a tract located at Newport in Orange county and a tract located in San Bernardino county.

"The trial court made a finding that the plaintiff's allegations of cruelty were true and that the defendant's allegations of cruelty were not true and awarded the plaintiff an interlocutory decree of divorce, counsel fees in the sum of $500, costs of suit, and also awarded her properties of the estimated value of about one-half of all the properties exclusive of those located in Orange county and those located in San Bernardino county. Those tracts the court held to be the separate property of the husband. After the decree was entered the plaintiff announced her intention to appeal and the court made an order awarding her counsel fees on appeal in the sum of $350, and for cost on appeal, $200. It refused to award her maintenance pending the appeal. Each party appealed from the judgment and also from the order. Each party settled a bill of exceptions, but they have brought up only one transcript.

"The defendant claims the evidence was insufficient to support a finding of cruelty against him. In this behalf he claims that all of plaintiff's evidence was not corroborated.

But it is not necessary that all of the evidence of the prevailing party should be corroborated. (*Cooper* v. *Cooper*, 88 Cal. 45 [25 Pac. 1062].) That at least a part of the testimony given by the plaintiff was corroborated is clear. (Tr., fols. 698, 818, 723, 707 and 717.) The fact that the defendant and Helen (his daughter by a former marriage) gave testimony contradicting the plaintiff created at most a conflict, but all conflicts were to be settled by the trial court and not a court of review.

"All other questions turn on the division of the properties between the parties and the awards of relief or refusal of relief to the plaintiff. It will not be controverted that in divorce actions the trial court has the power, where the charge is extreme cruelty, to award to the offended party such part of the community property ' . . . as the court, from all the facts of the case, and the condition of the parties, may deem just'. (Civ. Code, sec. 146, subd. 1.) The record before us shows that at all times the court and both counsel were attempting to ascertain what properties each spouse had an interest in and to divide such properties share and share alike. The record shows that the parties were married October 26, 1918. At that time the plaintiff was possessed of moneys in her own right in the sum of $3,100. The defendant was the owner of what is called the Newport property, fifteen acres, for which he paid $350 per acre and on which he owed $2,000. His equity amounted, therefore, to $3,250. He owned a lot valued at $1,200, but his brother held a judgment lien thereon for $350, leaving an equity of $850. The defendant also held a desert claim on 320 acres, being the property located in San Bernardino county. Later it was entered in his own name, but paid for out of community funds. There was evidence that shortly after their marriage the parties agreed orally to pool their interests and to become equal partners, that they did so, and that they bought and sold certain properties after the date of their marriage and before April 15, 1925, the date this action was commenced. The judgment held by the defendant's brother was paid by moneys advanced by the plaintiff. The encumbrance on the Newport property, both principal and interest, was paid by the partnership. Lands purchased were taken by the spouses under joint tenancy deeds. The expenses of both spouses

and of the husband's daughter, Helen, were paid out of a joint bank account. During that same period the expenses of, and the taxes and insurance on, all properties were paid out of the same joint bank account. This was done whether the title stood in the name of both spouses or in the name of the defendant. The Newport property stood of record in the name of the husband at the date of the marriage and the record was never changed. The desert claim was taken in the name of the defendant and was never changed. No writing was executed by the spouses showing the partnership nor the properties owned by it. In finding No. IV the trial court found that the parties acquired as copartners and as community property and held in joint tenancy every parcel except the lands in Orange county and those in San Bernardino county.

"In finding No. V the court found that the Newport property and the desert claim were the separate property of the defendant. It did not find the value of either tract, but awarded both tracts to him. We think that the court erred in applying the law to the facts.

"The desert land claim was clearly community property. The general rule regarding conveyances and contract of and concerning claims to public lands is stated in 50 C. J. 1123: 'But in the absence of any express or implied prohibition in the statute under which he is seeking to acquire the land, an entryman or one whose application to purchase land has been approved has an equitable interest in the land which he may assign or convey to another, although he has not yet paid the government price for the land.' At an early date that rule was adopted in California. For many years it had been provided by the federal statute that homestead claims might be located. On April 4, 1872, a statute was passed authorizing individuals to locate additional lands. (U. S. Rev. Stats., sec. 2306.) A claim entered under that section was the subject of dispute in the case of *Rose* v. *Wood & Lumber Co.*, 73 Cal. 385 [15 Pac. 19]. Speaking of the assignment of such a right, on page 388 the court said: 'As stated before, section 2306 is independent of the other provisions of chapter 5; and in the absence of an express prohibition against an alienation of the property by the claimant after the issuance of a certificate from the general land office, to locate in person or by

agent a certain number of acres, we cannot say that the right so to alienate does not exist. It is a right which need not in terms be granted by the sovereign authority, for it exists if not expressly prohibited, or opposed to public policy.' Under federal legislation supplemented by state legislation provision was made for the location of lots under what was known as the 'Townsite Acts'. A married woman had entered certain lots and a man who afterwards became her husband had located certain other lots. Later they married. Litigation arose regarding the title of the husband to the lots located by him. Title to the lots upon his request was taken in the name of his wife. The payments were made by the husband out of his separate money. In the case of *Morgan* v. *Lones,* 78 Cal. 58 [20 Pac. 248], it was held that said lots were community property. In *Phillips* v. *Carter,* 135 Cal. 604 [87 Am. St. Rep. 152, 67 Pac. 1031], the court was considering lands entered under the same statute as the desert claim was entered in the instant case. Commencing on page 606 the court cites many cases decided by the Supreme Court of the state of California and also many cases decided by the Supreme Court of the United States which declare the rule as stated above. Turning again to *Morgan* v. *Lones, supra,* at page 62, we quote as follows: 'The presumption is that property acquired by purchase during marriage is community property; and the party who claims it is separate property must prove it to be such by clear and satisfactory evidence. (Citing cases.)' In the record before us the defendant did not introduce evidence sustaining that burden.

██ "As to the Newport property the facts are slightly different. Both before and after the marriage it stood in the name of the husband. There was clear testimony of an oral partnership agreement. The court found a partnership was formed. If it was formed for the purposes hereinabove recited then from the moment it was formed the partners held the properties in trust for themselves and for each other and no writing was necessary to take the case outside the statute of frauds. (12 Cal. Jur. 861.)' There was no evidence that the interests of the partnership were, by the terms of any contract, limited to properties other than the Newport property. That property, as well as all others, went in. It thus appears that there was no evidence to sus-

tain finding No. V—that is, that the Newport property and the desert claim in San Bernardino county are defendant's separate properties.

 "The Newport property was set over to the defendant as his separate property because the trial court was of the opinion that a contract in writing was indispensable evidence in proof of any claim by the plaintiff. Whatever may be the rule in other jurisdictions, the rule is settled in this state contrary to the holding of the trial court. It will not be contended that a partnership may not be created by an oral agreement. When that agreement is entered into and is partly performed the statute of frauds is not applicable. (*Pio Pico* v. *Cuyas,* 47 Cal. 174, 178, 179; *Hill* v. *Den,* 121 Cal. 42 [53 Pac. 642].) In *Bates* v. *Babcock,* 95 Cal. 479, commencing on page 486 [29 Am. St. Rep. 133, 16 L. R. A. 745, 30 Pac. 605, 607], the court said: 'No interest or estate in the land is created by such an agreement, but by the subsequent acts of the parties under the agreement rights are acquired in reference to the land that may be purchased in pursuance of the agreement, which a court of equity will protect against any attempt to make the statute of frauds an instrument of fraud. . . . It is a familiar rule in equity, that lands acquired by a partnership for partnership uses are partnership assets, and are treated in equity as personalty, whether the partnership was formed by oral or written agreement. The same principle should apply when the object of the partnership is to deal in lands, and the assets of the partnership with which the lands are to be purchased are made up of the skill and money which are respectively contributed by the partners as its capital. Upon proof of the existence of such a partnership, the rights and obligations of the respective partners should be determined upon the same principles and with the same results as in other partnerships. The settlement of partnership accounts, and the conversion into money of the assets of the partnership, whether real or personal, and their division among the partners, has always been one of the functions of a court of equity, and that court never stops to inquire into the source of the title of such assets, or in whose name they are held. . . . If, however, the agreement was valid at its inception, it is not rendered invalid by the subsequent act of one of the parties, and although it cannot be changed

into a different agreement, such as an agreement for the conveyance of the land, yet either party has the right to its enforcement for the purpose of carrying out its original purpose,—the division of the profits resulting from the speculation. The same principles are applicable in an action to subject land which has become a portion of the assets of such a partnership to a sale under the directions of a court of equity, with a distribution of the proceeds thereof according to the rights of the individual partners.' (*Koyer* v. *Willmon,* 150 Cal. 785, 787 [90 Pac. 135], is to the same effect. (See, also, 12 Cal. Jur. 861.)

■ "In framing its decree the trial court awarded to each spouse property equal to one-half of the appraised value of those parcels found to be community, partnership or joint. Having done so it refused to allow to the plaintiff permanent maintenance in addition to said property awards. We have shown above that the plaintiff should have been awarded property, in money or in kind, representing her interest in the Newport property and her interest in the desert claim and that the court erred in not doing so. But the record does not contain any evidence showing that it was an abuse of discretion to refuse an allowance as for maintenance.

■ "The properties awarded to the plaintiff are not producing much of a net income. If counsel fees and costs had not been awarded to her the plaintiff would have been compelled to incur debts in order to maintain this appeal. The defendant is employed and receives a wage. He also has some income from his properties. These several facts show that the trial court did not err in allowing the wife $300 as counsel fees and $200 as for costs on appeal. Nor can it be said that said sums are excessive."

Defendant husband attempts to distinguish the various cases cited above to support the holding that the Newport property was partnership property upon the ground that in all of said cases the oral partnership applied only to lands to be acquired in the future; that in none of them is it held that an oral partnership agreement is effective to transfer lands already owned by one of the parties for the reason that this would constitute a transfer of real property without written agreement in violation of the statute of frauds.

This very question, however, arose in the recent case of *Perelli-Minetti* v. *Lawson*, 205 Cal. 642 [272 Pac. 573], and the court there upheld the partnership agreement. See, also, Browne on the Statute of Frauds, 5th ed., sec. 261a; *Musick Con. Oil Co.* v. *Chandler*, 158 Cal. 7 [109 Pac. 613]; *Scott* v. *Jungquist*, 179 Cal. 7 [175 Pac. 412]; *Duryea* v. *Burt*, 28 Cal. 569. As stated in Browne on the Statute of Frauds, *supra*, the doctrine stands either as an application of the law of implied trusts to cases of land purchased and held by one partner in derogation of his fiduciary obligation to the other or as a bald exception to the rule that no oral agreement can be made, directly or indirectly, to effect the transfer of any interest in land. In other words, the partners stand in a fiduciary relationship toward each other and each is estopped to assert the statute of frauds for the purpose of perpetrating a fraud upon the other.

It must, of course, be shown from the partnership agreement and the conduct of the parties that the property in question was to become part of the partnership property. In this case, as pointed out by the appellate court, the evidence thoroughly established the fact that the Newport property was to go to the partnership along with all the other properties of the parties.

The order denying plaintiff alimony pending appeal is affirmed; the order granting her attorneys' fees and costs on appeal is affirmed. So much of the interlocutory decree as grants an interlocutory judgment of divorce, together with counsel fees and costs, is likewise affirmed. Said decree, in all other respects, is reversed and the cause is remanded to the court below for further proceedings not inconsistent with these views.

Curtis, J., Langdon, J., Seawell, J., Tyler, J., *pro tem.*, and Waste, C. J., concurred.

Rehearing denied.