[Civ. No. 4713. Fourth Dist. Nov. 23, 1953.]

HARVEY C. BROWN et al., Appellants, v. DAVID
FAIRBANKS, Respondent.

434

Hector J. Rosso for Appellants.

Curtis, Knauf, Henry & Farrell for Respondent.

GRIFFIN, J.—Plaintiff Harvey C. Brown and his wife brought this action for declaratory relief against defendants Dave Fairbanks and Walter K. Skeoch, doing business as Southern California Minerals Company, in which plaintiffs allege that they were the owners since January 21, 1940, of the Pongo mining claim; that they commenced working upon it and believed it to be valuable and worthy of further exploration; that they contacted defendant Fairbanks and asked him to join them in developing the mine and suggested that he put up $1,000, in return for which they offered to give him a one-half interest in the mining claim and that they would work the mine together for their joint benefit; that Fairbanks agreed to accept the proposition but was unable to raise the $1,000 and that the offer was withdrawn; that a new proposition was made that if he worked for them in developing the mine, plaintiffs would, whenever the same began producing, "see that he was well paid" for his labor; that Fairbanks agreed to this and began working with plaintiffs on the mine in February, 1947, and after digging a shaft 75 feet in length it was discovered about April, 1947, that the mine was ready to begin producing; that due to lack of funds they were unable to commence production and the mine remained idle until November, 1948, when it was leased to defendant Southern California Minerals Company by plaintiffs; that the mineral company paid plaintiffs $200 per month for ore

extracted from the mine; that plaintiffs paid Fairbanks on account of his past work one-half of the monthly payments, totaling in excess of $3,000; that subsequently the Welfare Department informed plaintiffs that Fairbanks had been drawing old age benefits concurrently with these payments, to which he was not entitled; that plaintiffs agreed to make further payments to Fairbanks on condition that he repay the Welfare Department the full amount of his wrongful withdrawals; that upon the discontinuance of these payments by plaintiffs Fairbanks claimed some interest in the mine and mining claim; that such claim was made in bad faith and without rights. Plaintiffs sought a declaration of the rights of the respective parties, asked that the agreement between plaintiffs and Fairbanks be declared merely a contract of employment, and that all wages due him have been paid; that Fairbanks had no interest in the mine or proceeds from the sale of its products, and that defendant mining company pay plaintiffs the payments due, which were withheld by it pending the determination of the respective claims.

Defendant Fairbanks' answer denied generally the allegations of the complaint and by way of cross-complaint he claimed a one-half interest in the mine, mining claim, and proceeds thereof, and alleged that he and plaintiffs, by oral agreement on February 1, 1946, associated themselves together as joint venturers for the purpose of working and developing said claim for production and for sale or lease; that as a result of his contribution he was to receive the one-half interest above mentioned. He asked for a declaration of the rights of the respective parties; that he be declared the owner of an undivided one-half interest in the mining claim, lease, and one-half of all future royalty payments made under the lease, and that plaintiffs should account to him and to the court for all money received by them.

In an amended cross-complaint similar allegations were made claiming in addition that plaintiffs agreed to contribute to the joint venture or partnership venture, the mining claim in dispute; that Fairbanks was to perform services and contribute time, labor and skill, and share the costs and expenses of development, and that they agreed that each should own a one-half interest in all the assets of the joint venture, including the mine and mining claim; that the joint venture or partnership was to engage in the business of developing said claim for production, sale or lease; that he bestowed his work and skill and furnished his share of the money, and

plaintiffs refused to recognize his interest therein. It was prayed that there be a declaration that a joint venture or partnership existed in the ownership of the claim and in the business of its development for production, lease or sale for profit; that Fairbanks' title to a one-half interest therein be quieted, for an accounting and distribution in kind of all its assets, and for a dissolution of the joint venture or partnership.

The answer to the cross-complaint denied generally the allegations thereof and as a separate defense pleaded the statute of frauds under the provisions of section 1624, subdivision 4 of the Civil Code.

At the time of trial, a motion to dismiss the amended cross-complaint on the ground that the cause of action was barred by section 1624, subdivision 4 of the Civil Code, was denied. After trial, the court found generally that the record title of the mining claim stood in the name of plaintiffs; that Fairbanks worked on the claim jointly with Brown until April, 1946, and that it was at that time open for production; that plaintiffs paid Fairbanks $3,280; that Fairbanks and plaintiffs entered into an oral agreement of venture or partnership under which they agreed to engage in the business of developing the claim for production, sale or lease; that Fairbanks performed all conditions of his agreement with them; that he became the owner of a one-half undivided interest in all the assets of the joint venture or partnership; that the assets include the mining claim, the lease, and all money accrued or to accrue thereunder; that the lessee paid plaintiffs $6,561.17, as royalty up to July 31, 1951; that there is due lessors additional payments of $3,125.13, up to May 15, 1952; that there is due Fairbanks $500.58 from plaintiffs; that the agreement and cause of action are not barred by section 1624, subdivision 4 of the Civil Code; that the partnership be dissolved and the assets distributed one-half to plaintiffs and one-half to Fairbanks, and Fairbanks is to recover one-half of all accrued and future royalty payments under the lease.

On this appeal, plaintiffs claim, in effect: (1) that the evidence is insufficient to sustain the finding that plaintiffs and Fairbanks were mining partners or joint adventurers; (2) that any claimed transfer of interest in the mining claim must be in writing under section 1624, subdivision 4 of the Civil Code and under section 2606 of the Public Resources Code, providing that grubstake contracts and prospective agreements affecting the title to mining locations are void and of no effect unless recorded; (3) that it would be inequitable

to allot Fairbanks a one-half interest in a mine worth $20,000, in exchange for his labor in assisting plaintiffs in sinking a tunnel 75 feet in length.

The evidence of what was said between the parties as to the arrangements constituting the claimed oral agreement of partnership or joint venture is not only in sharp conflict but is quite difficult of interpretation as to the true intent of the parties.

Harvey C. Brown testified that he and his wife did all assessment work on the claim, ran a tunnel for about 50 feet, and that the claim had been formerly owned by others; that they owned the claim on January 21, 1940; that in October, 1945, it needed additional work; that he told Fairbanks he had this mine but needed someone with money to help him with it; that the two looked it over and agreed if Fairbanks would put up $1,000 he would give him a one-half interest in it by quitclaim deed; that later Fairbanks had some tax difficulty and stated he could not raise the $1,000, so he and his wife and Fairbanks called the deal off; that in February, 1946, he told Fairbanks if he would go out and help him get the mine developed a little more so it could be leased or sold he would see that he would "be well taken care of"; that Fairbanks agreed; that they worked on it until April, 1946, and stopped work and the mine was closed down for the rest of the year except for about 10 days' work taking samples; that he endeavored to sell it or lease it and finally, in the latter part of 1948, he interested defendant company in leasing it at a minimum monthly royalty of $200 per month; that he showed Fairbanks the lease he executed and started paying him about $100 per month "because he helped me develop the mine so I could get it in shape to make the lease"; that he paid for all the "grub" and supplies, and later furnished Fairbanks with a $50 automobile for transportation; that he determined that about $2,000 would constitute "well paid" as indicated in their agreement; that due to Fairbanks' misrepresentation to the Welfare Department that he had no other income during this period, and since Fairbanks drew $75 per month, totaling $575 from it, he agreed to continue paying Fairbanks $100 per month out of which he was to repay the Welfare Department $25 per month, and that after he repaid the Welfare Department he ceased making further payments to Fairbanks. Mrs. Brown corroborated her husband's testimony to some extent.

Fairbanks testified that in October, 1945, at the first conversation had with him about the mine, Mr. Brown said to him: "I have got that mine and I can't do nothing with it myself, and if you want to go, come up and help me, we will share and share alike on it. You help work, do the work, and if we find anything, we will split it, it will be ours"; that there never was a conversation about him putting up $1,000 but that prior to October, 1945, they may have talked about it, but no mention was made about leasing it or going into partnership with him; that about March, 1946, he went with Mr. Brown to the mine and lived with plaintiffs and together they decided where to dig the shaft, and they "puttered" around over a period of two months' time and sank a shaft about 75 feet in depth and they then considered it in a condition for production; that they both bought food and supplies and split the cost; that he did go upon the claim later and did take out some samples for a prospective lessee (not the defendant company); that subsequently Brown brought the lease from defendant company and discussed its terms with him and wanted to know if he wanted to sign it with him but he did not and Brown stated he could put his signature to it any time he wanted to; that he never considered himself an employee of plaintiffs.

Defendant Fairbanks produced a witness who claimed he heard Brown say in the presence of Fairbanks while they were working on the mine that "he and defendant Fairbanks owned one of the best mines in Death Valley and that they were going to make a lot of money out of it." Another witness, the son of Fairbanks, testified that at a bar in Baker Brown said: "We finally decided" to go out and work the mine; "it was going to go 50-50 work on the mine"; that they were talking about "being together around the thing there"; that later they said "each" was going to get $100 a month royalty out of it and that he gave his father $100 to buy supplies on one occasion.

Fairbanks' sister testified that Fairbanks originally said to Brown that he was willing to go out to the mine and "make a mine out of it," and share the expenses and work alike; that "we will share it if it turns out to be a good mine and we will share the profits of it, and if it does not turn out to be anything, we will both lose"; that Brown and Fairbanks discussed the advisability of entering into the lease with defendant company and that they agreed it should be signed by Brown and his wife alone because he trusted

Brown. The sister testified that she had had difficulty in hearing for a period of 10 years. Brown denied any such conversation. It is upon this testimony that the court found as indicated.

We must conclude, in the face of the findings, that the offer plaintiff Brown claimed he first made to Fairbanks in reference to the $1,000 and one-half interest in the mine was not made; and that plaintiffs' claim of an employment contract with Fairbanks was not established.

 It has been held that parties may orally agree upon a joint partnership or joint venture pertaining to the business of engaging in mining ventures and the partnership, as such, may own mines or lease or sell them, and property of the partnership, although held in the name of one partner, may be partitioned in a partnership accounting. (*Coward* v. *Clanton*, 79 Cal. 23, 26 [21 P. 359]; *McNichols* v. *Nelson Valley Bldg. Co.*, 116 Cal.App.2d 266, 271 [253 P.2d 744]; *Musick Consol. Oil Co.* v. *Chandler*, 158 Cal. 7 [109 P. 613]; *Koyer* v. *Willmon*, 150 Cal. 785, 787 [90 P. 135]; *Scott* v. *Jungquist*, 179 Cal. 7 [175 P. 412]; *Swarthout* v. *Gentry*, 62 Cal.App.2d 68 [144 P.2d 38]; *Bastjan* v. *Bastjan*, 215 Cal. 662 [12 P.2d 627]; *Perelli-Minetti* v. *Lawson*, 205 Cal. 642 [272 P. 573]; 12 Cal.Jur. p. 861, § 12.)

 In *Settembre* v. *Putnam*, 30 Cal. 490, it was held that where a person claiming an undeveloped mine, agrees with another that if he will devote his labor and skill in its development, the former will furnish him with tools and provisions, and give him an equal interest in the mine in case it shall prove valuable, the latter is entitled to an equal interest in the mine when it becomes valuable, if he devotes his labor and skill until that time; that if two or more persons, as mining partners, claim and develop a mine situated upon land owned by a third person, and the partners authorize one of their number to purchase the land of the owners for the benefit of all, and he buys the same in his own name, he holds the legal title of his partners' proportion in the mine in trust for them; that where a party institutes an action against a portion of his associates in a mining partnership to establish a disputed right to an interest in a mine, and a conveyance of the interest claimed is a part of the relief sought, a court of equity may give judgment establishing the right and directing a conveyance to be made, without dissolving the partnership.

It therefore appears that if the evidence is sufficient to sustain the finding that plaintiffs agreed to form a partnership or joint venture and contribute the mining claim to it, then the transaction is not necessarily barred by the statute of frauds.

In *Dutton* v. *Interstate Inv. Corp.*, 19 Cal.2d 65 [119 P.2d 138], it was held that an agreement assigning a fractional interest in the oil and hydrocarbons produced under an oil and gas lease operates to transfer an interest in real property and is required by the statutes to be in writing, but a contract whereby a party is to have a fractional interest in the net profits from a transaction involving the procurement of an oil lease is not required to be in writing. In that case, however, a partnership agreement such as here presented, was not involved.

The question then presents itself whether the evidence is sufficient to sustain this finding of the trial court, and whether it would sustain the finding of a copartnership or joint venture or whether, in effect, the agreement was that no joint partnership was intended but that Fairbanks would help plaintiff and if they found anything they would divide the profits. Under this latter interpretation, the statute of frauds would not apply. (*Coward* v. *Clanton*, 79 Cal. 23, 27 [21 P. 359].)

While a finding as to the latter interpretation might be supported by the evidence and the agreement involved, such is not the finding of the court. We therefore must consider the elements necessary to the formation of a partnership or joint venture and the evidence here produced indicating the letter of the contract, the conduct of the parties, and their intent to form such a copartnership or joint venture. (*Westcott* v. *Gilman*, 170 Cal. 562 [150 P. 777, Ann.Cas. 1916E 437].)

A special or qualified partnership under section 2351, et seq. of the Public Resources Code was not formed for the reason that Fairbanks did not own any interest in the mine at the time of the making of the agreement to do work upon it. (*Prince* v. *Lamb*, 128 Cal. 120 [60 P. 689]; 17 Cal.Jur. p. 439, § 106, and cases cited.) An ordinary or general partnership, under the Uniform Partnership Act (Corp. Code, § 15006) is defined as an association of two or more persons to carry on as coowners a business for profit. A provision to share losses may be implied in a partnership or joint venture agreement. (*Fitzgerald* v. *Provines*, 102 Cal.App. 2d 529 [227 P.2d 860]; *Welch* v. *Alcott*, 185 Cal. 731 [198

P. 626].) [11] A partnership may be formed for one or two ventures as well as for the conduct of a general and continuous business. ■ The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business. (Corp. Code, § 15007.) ■ To constitute a partnership it is not necessary that there should be property forming its capital jointly owned by the partners. (*Whitley* v. *Bradley,* 13 Cal.App. 720, 730 [110 P. 596]; *Doudell* v. *Shoo,* 20 Cal.App. 424 [129 P. 478].)

■ In *Tutt* v. *Davis,* 13 Cal.App. 715 [110 P. 690], it was held that where a partnership was formed for the purpose of dealing in real estate, as between the parties, in settlement of their equities the assets of the firm must be regarded as personal property. (See, also, *Chapman* v. *Hughes,* 104 Cal. 302 [37 P. 1048, 38 P. 109].)

■ In *Moropoulos* v. *C. H. & O. B. Fuller Co.,* 186 Cal. 679 [200 P. 601], it was held that where one holding a lease of premises enters into a partnership with another agreeing to the use and possession of the leased property in the business, a valid interest in the lease is thereby vested in the partnership, and a formal assignment of the lease to the partnership is not required. ■ In addition, it was decided in *McAtee* v. *McAtee,* 105 Cal.App. 555 [288 P. 114], in an action for accounting of partnership assets, involving an acre of land in which the title was held by one partner and in which an accounting was sought and the other partner claimed that any agreement affecting the interest in real estate must be in writing to be valid, the court said there are two answers to this claim: (1) "The agreement sued upon is one of partnership. The one acre of land was sold by the appellant and the complaint herein seeks an accounting of the partnership funds, which includes the money received from the sale of the land, and does not seek the enforcement of any contract affecting real property." ■ (2) "Furthermore, the evidence discloses that from the beginning of the partnership, and for nearly four years thereafter, the partnership was in full operation. This is a sufficient performance to take the contract out of the statute of frauds, even if it were a contract affecting real property." (Citing cases.)

■ In the instant case the evidence does show that plaintiffs first contacted Fairbanks and did offer him a one-half interest in the mining claim conditioned that he pay $1,000. This fact does, in and of itself, indicate that plaintiffs were willing to give a one-half interest in the mine under certain

conditions. Subsequently, Fairbanks was importuned to go upon the mine and perform certain services with plaintiffs and if their efforts proved to be successful in bringing the mine into production it was agreed that Fairbanks was to receive a one-half interest in "it," which may be construed to be the mine as well as the profits therefrom. In view of the fact that Fairbanks did perform his part of the claimed partnership or joint venture agreement and did assist in bringing the mine into production and performed everything required of him under the agreement, and since plaintiffs failed and refused to turn the mine over to the partnership, as agreed upon, plaintiffs were estopped under the decision in *McAtee* v. *McAtee, supra,* and the authorities therein cited, from raising the defense of the statute of frauds. The distribution of the net proceeds from the profits of the mining venture was some evidence of the formation of a partnership. Accordingly, it must be held that there is sufficient evidence to show a partnership or joint venture, and that the court was justified in distributing the assets of the partnership accordingly. The evidence does not clearly establish any unjust enrichment or what the ultimate value of the mine may prove to be.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied December 16, 1953.