[Civ. No. 24852.   Second Dist., Div. One.   Dec. 5, 1960.]

EN TAIK HA, Respondent, v. JAY M. KANG, Appellant.

Ulma A. Abels for Appellant.

Barbara Warner, Warner, Sutton & Warner and Caryl Warner for Respondent.

FOURT, J.—This is an appeal from a judgment in favor of plaintiff in a matter involving a partnership.

A résumé of some of the facts is as follows:

Plaintiff, together with a friend, Mabel Lim, orally entered into a partnership agreement with the defendant on or about November 1, 1948, for the purpose of buying income property in the city of Los Angeles. The plaintiff was a Korean national and was not learned or schooled in the English language or in the ways of doing business in Los Angeles County. Defendant was a fellow countryman and a long time friend of plaintiff and the plaintiff's family. Defendant was also a real estate broker doing business in the city of Los Angeles. The plaintiff selected the property which was to be purchased.

On December 2, 1948, the partnership purchased from Mr. and Mrs. Robbs a building and lot which could be and was later used for rentals. The price of the property was $15,500; $6,000 was paid down in cash and a note for the balance of $9,500 was made to the sellers, secured by a deed of trust on the property. The defendant signed the note securing the deed of trust. Title could not be taken in the name of the plaintiff because of the alien land law restrictions. Title however was taken in the name of the defendant. Of the amount paid in cash the partners put up the following: plaintiff—$2,000 or $2,200; Mabel Lim—$3,000. There was considerable confusion and doubt as to where the balance of the money came from. The plaintiff was of the opinion that the defendant had supplied the same.

A second deed of trust on the property was given by defendant on December 2, 1948, to Lim and the plaintiff to secure a note in the sum of $6,000 and bearing interest at the rate of 4 per cent per annum, principal and interest payable in monthly installments of $30 or more commencing on December 1, 1949. The latter note was in the possession of the plaintiff. Defendant collected a real estate broker's commission on the sale of the property.

On March 8, 1949, the parties entered into an agreement in writing (which agreement was prepared by defendant) to share the profits of the partnership, one-third each, and profit was defined as: "Profit means after all the expenses and original cost of the property has been deducted from the sale."

Defendant stated that he had no interest in the real property at the time of its acquisition and that he had not put up any of the purchase price.

On April 12, 1949, Mabel Lim withdrew from the partnership and plaintiff purchased her interest for $3,000 which amount represented Mabel Lim's contribution. In the transaction plaintiff put up the $3,000 (which amount she gave to the defendant) for the purchase of Lim's interest. However, the defendant in drawing the receipt therefor, made it appear that he had put up the money and further attempted to make it appear that plaintiff had only a $3,000 interest in the entire transaction rather than in the amount of at least $5,000 as of April 12, 1949. The note by defendant to Lim and plaintiff dated December 2, 1948, and secured by the second deed of trust was on April 12, 1949, assigned to plaintiff by Mabel Lim.

Plaintiff put up an additional $1,000 toward the property

at a later date and an item of $862.50 toward repairs and maintenance on the property.

In 1951 the note secured by the second deed of trust given by defendant to plaintiff in 1949 was delinquent, no payments having been made thereon. An attorney named Goldstein, representing the plaintiff, negotiated a new note and a new trust deed in exchange for the note and trust deed executed in 1948. The new note given by defendant to plaintiff (plaintiff's son was named as payee in said note at her request) was in the sum of $6,000 and provided for 6 per cent interest.

Plaintiff elected to terminate the partnership on September 5, 1958, pursuant to section 15031, subdivision (1)(b), Corporations Code. She thereafter brought the action with which we are now concerned.

The trial court found in favor of the plaintiff and ordered that a receiver of the property be appointed, the property be sold, the debts paid; that after administration expenses and other costs and charges were satisfied that plaintiff be repaid $862.50 and that the balance from the sale be apportioned two-thirds to the plaintiff and one-third to the defendant.

Appellant vehemently denied in the first instance and during most of the trial that there was any partnership between him and plaintiff; however, he now concedes that there was such a partnership between them. Defendant contends presently that there was an accord and satisfaction and that plaintiff sold her interest in the partnership property to him; further that the plaintiff's cause, if any, is barred by the statute of frauds and that the trial judge failed to find on material issues.

With reference as to whether there was an accord and satisfaction—the court did find that there was no accord and satisfaction and further found that there was a partnership which continued from its inception to September 5, 1958. The plaintiff, of course, was entitled to the return of her contribution to the partnership. Section 15018, Corporations Code, provides in part as follows:

"The rights and duties of the partners in relation to the partnership shall be determined, subject to any agreement between them, by the following rules:

"(a) Each partner shall be repaid his contributions, whether by way of capital or advances to the partnership property and share equally in the profits and surplus remaining after all liabilities, including those to partners, are satisfied; and must contribute towards the losses, whether of capital or other-

wise, sustained by the partnership according to his share in the profits.''

There was nothing irregular in the partnership in this case agreeing that plaintiff and Lim should receive 4 per cent interest on their capital contribution in 1948. (*Luchs* v. *Ormsby*, 171 Cal.App.2d 377 [340 P.2d 702].) Furthermore, it is perfectly proper to make loans and partners frequently do make loans to partnership firms and such does not necessarily change the contract of partnership. The defendant was obligated to repay the plaintiff his proportion of the advances made by the plaintiff. It was stated in *Vaughan* v. *Caldwell*, 200 Cal. 572, 577 [253 P. 929]:

''. . . It is admitted by the answer that the plaintiff and defendants were to share the losses and divide the profits of the partnership equally between them. Therefore, it follows as a matter of course, that since they were to share the losses and divide the profits equally, if the plaintiff advanced more money than the defendants, there was an implied contract that the defendants would repay their proportion of the money advanced. . . .''

In the present case, in addition to the implied obligation there was an express agreement to reimburse the plaintiff and Lim for their contributions and for interest thereon. The defendant made out a promissory note for $6,000 with interest at 4 per cent annually, payable in $30 monthly installments and secured by a second deed of trust on the property. A note may be given under the circumstances. (68 C.J.S., §§ 79, 80, pp. 520, 521.)

After the last mentioned note was executed the parties, by a writing prepared by the defendant, confirmed the existence of the partnership and the interests therein.

At the time of the exchange of the promissory notes in 1951 the 4 per cent interest note of 1948 was delinquent in that neither the interest nor the payments of principal had been paid to plaintiff. Plaintiff was proper in seeking an adjustment of the obligation. Under the circumstances it appears reasonable that she should have received a note providing for the same principal amount with 6 per cent interest and $60 monthly payments, and a provision in the note for attorney's fees in the case of default. There was in the evidence ample support for the court's finding that the partnership was not terminated on the occasion of the substitution of the notes and that it was not an accord and satisfaction. Too, the partnership is presumed to have continued in that

there were no proceedings of any kind to dissolve or settle the accounts or wind up the affairs of the partnership. In fact the lawyer who handled the exchange of the notes stated in effect that the word "partnership" was not even mentioned in any of the transactions. The partnership under the circumstances was presumed to have continued. (Code Civ. Proc., § 1963, subsec. 32; *Asamen* v. *Thompson,* 55 Cal.App. 2d 661, 668 [131 P.2d 841]; *Thompson* v. *Thompson,* 91 Cal. App. 554, 569 [267 P. 375].)

It is clear that the evidence was sufficient for the court to determine that the substitution of the 1951 note and deed of trust by the defendant for the plaintiff related only to repayment of the contributions made by plaintiff and not to any division of profits or to the dissolution of the partnership. There was also testimony that defendant had told plaintiff long after the exchange of the notes that they were partners, and plaintiff continued to work on the property and made other substantial contributions. The question of whether the transaction constituted an accord and satisfaction was one of fact. (*D. E. Sanford Co.* v. *Cory Glass etc. Co.,* 85 Cal.App.2d 724, 730 [194 P.2d 127].) On conflicting evidence the court found against the defendant.

Appellant, as heretofore indicated, until the very last in the trial court vehemently denied that there was any partnership between the parties. When the evidence became such that it was overwhelmingly against him he then argued that in fact there was a partnership but that there was an accord and satisfaction concerning which we have heretofore given our views. Defendant now, for the first time, urges that the plaintiff in fact sold her interest in the partnership to him when the notes were exchanged. He should not be permitted to play hot and cold with the court. ▮ Justice Peters said in *Algeri* v. *Tonini,* 159 Cal.App.2d 828, 832 [324 P.2d 724]:

"It is elementary that questions not raised in the trial court will not be considered on appeal. (See many cases collected 3 Cal.Jur.2d, p. 604, § 140.) ▮ Under this well settled rule a party is prohibited from asserting on appeal claims to relief not asserted or requested in the court below, and is prohibited from asserting matters of defense not there presented. (*Los Angeles Inv. Co.* v. *Home Sav. Bank,* 180 Cal. 601 [182 P. 293, 5 A.L.R. 1193]; *J. D. Halstead Lbr. Co.* v. *Security etc. Co.,* 116 Cal.App. 679 [3 P.2d 52]; *Estate of Raphael,* 115 Cal.App.2d 525 [252 P.2d 979]; *Rabbitt* v. *Carthage Marble Corp.,* 12 Cal.App.2d 572 [55 P.2d 1205];

*Sketchley* v. *Lipkin,* 99 Cal.App.2d 849 [222 P.2d 927]; 3 Witkin, California Procedure, p. 2261.)''

In any event the findings of the trial court based upon substantial evidence and the conclusions of law preclude any thought of a sale of plaintiff's interests in the partnership to defendant. The reconveyance of the original deed of trust which defendant conceives to be of some assistance to him in this matter was solely for the purpose of substituting the new note and deed of trust and not to conclude the partnership.

There can be no question that the partnership was dissolved on the notice from plaintiff to defendant on September 5, 1958. There had never been up to the time of trial an accounting between the parties for the rents received by the defendant and the profits. The partners in this case were fiduciary, yet the defendant claimed the property as his own and refused to recognize the plaintiff as a partner. To return her contribution with interest did not in anywise account for the rents and profits. The plaintiff was by the nature of things entitled to an accounting.

Appellant further asserts that the statute of frauds bars any rights of plaintiff as a partner. A partnership may be formed by parol, even though its sole purpose is to deal in real estate. In *Swarthout* v. *Gentry,* 62 Cal. App.2d 68, 78-79 [144 P.2d 38] it is stated:

''. . . If a partnership is formed and real property is dedicated to partnership use and is used by the partnership for its sole benefit the fact that title was acquired by one or more of the partners with their private funds or was owned by them as tenants in common prior to the formation of the partnership will not necessarily defeat the claim of the partnership to ownership of the property in the absence of an express agreement that it should remain property of those in whose names title stood. Under such circumstances the owners of the legal title hold the property in trust for the partnership. (*Bastjan* v. *Bastjan,* 215 Cal. 662 [12 P.2d 627].) The rule is thus stated in *Perelli-Minetti* v. *Lawson,* 205 Cal. 642 [272 P. 573]:

'' 'The partnership agreement was not in writing. ''A partnership in lands may be formed by an agreement in parol. Such parol agreement is valid and may be enforced between the parties.'' (*Musick Cons. Oil Co.* v. *Chandler,* 158 Cal. 7, 12 [109 P. 613, 614]; *Koyer* v. *Willmon,* 150 Cal. 785, 787 [90 P. 135]; *Scott* v. *Jun[g]quist,* 179 Cal. 7, 9 [175 P. 412].)

The relations between the parties were confidential and each was a trustee for the other in all partnership transactions. (*Koyer* v. *Willmon, supra.*) "If property owned by one of the partners before the organization of the firm has been used for partnership purposes, it must be determined from the partnership agreement and the conduct of the parties, whether it has become a part of the firm property or remains the property of the one partner. Thus a lease of premises occupied by the firm business procured by one partner before formation of the partnership may become firm property without formal assignment, if it is so understood and the partners regard it as such." (Rowley's Modern Law of Partnership, § 277.) "It is not necessary to show that the partnership property was purchased with partnership funds. Land standing in the name of an individual partner may have been contributed by him as his portion to the firm assets. The true method of determining, as between the partners themselves, whether land standing in the name of the individuals is or is not to be treated as partnership property, is to ascertain from their conduct and course of dealing the understanding and intention of the partners themselves, which, when ascertained, should unquestionably control." . . .

" 'In the language of the trial court: ". . . Even though the ranch property in question may have originally come to the parties in the character of tenants in common, this character was destroyed by the parties having farmed and operated it upon joint account and as partnership property and by their acts thereby made it partnership assets." ' (See also *McNab* v. *Mills,* 199 Cal. 231 [248 P. 657]; *Chapman* v. *Hughes,* 104 Cal. 302 [37 P. 1048, 38 P. 109].)

"Nor does the statute of frauds prevent proof of the existence of a trust in favor of the partnership where title stands in the names of the partners or in that of a third person. In *Bates* v. *Babcock,* 95 Cal. 479 [30 P. 605, 29 Am. St.Rep. 133, 16 L.R.A. 745], it was held that under such circumstances the statute of frauds could not be invoked to commit a fraud on the partnership by depriving it of property belonging to it. *Perelli-Minetti* v. *Lawson, supra,* and *Bastjan* v. *Bastjan, supra,* are to the same effect."

In any event, in this case the parties reduced to writing their basic agreement to share in the profits, and the statute was satisfied.

The last contention of the appellant is that the trial court failed to find on all of the material issues. He cites as

authority the recent case of *Aero Bolt & Screw Co.* v. *Iaia,* 180 Cal.App.2d 728 [5 Cal.Rptr. 53]. We feel some acquaintance with the Aero Bolt case, having written the opinion. The facts and circumstances of that case and the one presently before us are not comparable in any respect.

Appellant states in effect that the court never determined the legal effect of the note in the sum of $6,000 with 6 per cent interest executed by the defendant in substitution for the original note of $6,000 with 4 per cent interest nor what the legal effect of the payment of that note by the defendant was, nor was it determined whether the payment of the note constituted a discharge of the partnership or terminated plaintiff's interest in the partnership.

The court in fact did find that each of the parties had been reimbursed for his or her original contributions, that there was no accord and satisfaction and that the partnership was not dissolved until September 5, 1958, and further found that all of the allegations of the second, third and fourth affirmative defenses of the defendant were untrue.

A fair reading of the findings as a whole brings us to the conclusion that the trial court did find on all of the issues in the case. ▆▆▆ Findings must be considered as a whole and must be liberally construed to support the judgment. (*McKeon* v. *Giusto,* 44 Cal.2d 152, 158 [280 P.2d 782] and cases therein cited.)

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied December 27, 1960, and appellant's petition for a hearing by the Supreme Court was denied January 31, 1961.